## FITZGERALD *v.* SAXTON.

### Opinion delivered February 2, 1894.

1. *Highways—Jurisdiction of municipal corporations.*
   Where the limits of a city are extended so as to take in outlying territory, the control of the county over the public highways in such territory ceases, and the city immediately becomes possessed thereof.

2. *Highway—Change of route—Prescription.*
   Where the original route of a highway is changed, and a new route substituted by the invitation or acquiescence of the owner of the land over which it lies, the use of the same for the statutory period, without objection by the owner, will be considered a valid substitution of the new location for the old.

Cross-Appeals from Pulaski Chancery Court.

DAVID W. CARROLL, Chancellor.

STATEMENT BY THE COURT.

This is a proceeding instituted by the appellant, as plaintiff, in the Pulaski chancery court, against appellees, as commissioners and collector of Improvement District No. 25, in the city of Little Rock, on the 16th July, 1890, to enjoin them from entering upon and appropriating plaintiff's land as a street, and improving the same, and also from collecting the taxes levied on his said land for the purpose of said improvements. Sundry other questions were raised by the original complaint, but the two suggested above are all that are presented for our consideration.

The defendants answered, making their answer a cross-bill with prayer for the enforcement and collection

of said taxes, amounting for the years 1890 and 1891, to the sum of $135.00, and also for the statutory penalty and allowance of attorney's fee.

A temporary restraining order was made, in answer to the prayer of plaintiff, by the county judge, in the absence of the chancellor from the county.

The cause was heard on the 9th day of May, 1892, by the chancellor and decree rendered to the effect that the injunction be perpetual as to the taking of plaintiff's land for a street, and the improvement thereof as such ; but dissolved as to the collection of the taxes, which were held to have been properly and lawfully levied. Neither penalty, attorney's fees, nor interest were allowed. Both parties appealed from that decree to this court.

It appears from the agreed statement of facts, that the ten acres in controversy are part of a quarter section of land owned originally by Lemuel R. Lincoln, who sold the same by deed to Augustus Marchand March 24, 1851, Augustus Marchand to Bishop Byrne, December 29, 1851, and that plaintiff (Edward Fitzgerald) bought same from Thomas J. Riley as commissioner in chancery, December 16, 1879. It does not appear how the title passed from Augustus Byrne to Riley as commissioner in chancery. The description of the ten acre tract in all these deeds and conveyances is substantially the same, and is as follows, to-wit :

"That part of a tract of land surveyed by Dr. Samuel H. Webb, December 23, 1851, being part of the southeast quarter of section four (4), township one (1) north, range twelve (12) west, 5th p. m. beginning at a point at the south-east corner of block No. 410, agreeable to survey made by I. M. Moore for Lemuel R. Lincoln in laying out lots adjoining the city of Little Rock, and known as Lincoln's Addition, and running thence west (40) forty rods ; thence north (40) forty rods ;

thence east (40) forty rods to the northeast corner of block 411, in Lincoln's Addition aforesaid; thence south (40) forty rods to the place of beginning."

It appears that the only plat or bill of assurance of Lincoln's Addition of record is the one recorded in "A" 2, p. 113, in the recorder's office of Pulaski county, filed February 19, 1857, by Peter T. Crutchfield, administrator of the estate of Lemuel R. Lincoln, then deceased; and a copy of this is stated to have been filed in the papers in the case of *Webster* v. *City of Little Rock*, 44 Ark. 537. A plat of the S. E. $\frac{1}{4}$ Sec. 4 T. 1 N. R. 12 W., the quarter section mentioned above as laid off in blocks and lots and sold by said administrator in obedience to an order of the chancery court, on February 2, 1857, is attached to and is a part of the transcript herein, showing the location of the ten acres in controversy, and also the location of the Lincoln House, frequently referred to in the testimony herein, as well as of a part of Tenth (formerly Caroline) street as extended into this tract from the east, and some adjacent blocks.

It appears that, on December 19, 1879, appellant conveyed by deed the northeast quarter of said block 410, and to the center of Bishop and Tenth streets adjoining same on the west and north respectively, concluding with the words "together with the one-half of said streets bounding the same, the said streets subject to the right of way for the public." And that this was re-conveyed afterwards to appellant by same description.

It appears, also, that, for many years, the city street named "Bishop street" has been left open and extends through the center of said ten acre tract from north to south, and that the street now known as "Tenth street," formerly Caroline street, passes through the center of said tract from east to west, the two streets dividing the tract into four blocks of equal size, the said blocks

No. 410 and 411, being the eastern blocks of the four, the two west of Bishop street having no numbers.

It appears that these two streets and four blocks, making up the whole ten acres, are thus laid off in exact conformity with the corresponding streets and blocks in the city of Little Rock, the two streets being parts of Bishop and Tenth streets respectively, the one extending from the north to the center of the north line of the tract, and passing out south from the center of the south line ; and the other to the center of the east line and passing out from the center of the west line of the tract —the city of Little Rock being on all sides and in all directions from it. It also appears from the plat exhibited that this ten acre tract is laid off altogether without reference to the lines and boundaries of governmental surveys of the land; and that this conformity to the city admeasurements dates back to the said platting of the same while owned by said Lincoln.

It appears that, at various times during his ownership, appellant has leased various lots and parcels of ground in this tract to various and sundry persons, recognizing the streets through and blocks on said tract in making descriptions in general conformity to them.

Among the items of the agreed statement of facts is one expressed in these words, to-wit : " That if the ten acres in controversy is in the city limits of the city of Little Rock, it is there by virtue alone of the act of the legislature of Arkansas, April 28, 1873, as construed by the Supreme Court of Arkansas, in the case of *Webster* v. *City*, 44 Ark. 537, unless it be by acquiescence or use."

It further appears from the agreed statement of facts that city taxes were collected on said tract for the years 1874–1877 inclusive, and for the years 1880–1884 inclusive, in the name of plaintiff, as blocks 410 and 411, Lincoln's addition to the city of Little Rock, except for the year 1880, the west half of said tract not being as-

sessed by any other description, either as city or county property. (In brief of appellees' counsel, we find a reason suggested why the city taxes on these lots were not collected for the intervening years.) From 1884 the taxes for the city have been continued to be collected on this property up to the trial of this cause.

The testimony of witnesses will be referred to in the opinion as occasion may demand.

*Blackwood & Williams* for appellant, Fitzgerald.

1. There is no street through this property, either by dedication, limitation or prescription, and said property has never been platted into lots or blocks. 47 Ark. 71; *Ib.* 431; 50 *id.* 53; 15 Ill. 235; 108 *id.* 467; 87 *id.* 65; 41 Wis. 501; 11 N. E. Rep. 484; 55 Am. Rep. 618; 49 Wis. 697; Mansf. Dig. sec. 738; 44 Vt. 239, 243; 32 Mich. 279; 67 Tex. 345; 103 Ind. 349; 12 Atl. Rep. 667; 9 *id.* 63; 70 Pa. St. 125.

2. The property is not in the city, and hence not subject to taxes. It was not laid off into lots and blocks (44 Ark. 537), and hence did not become a part of the city, under the act of April 28, 1873. If not in the city, the council had no power over it. Mansf. Dig. secs. 825, 826.

*Ratcliffe & Fletcher* for appellees.

1. There has been a public highway through this property for more than twenty-five years. Tenth street has been used by the public as a highway, openly and adversely, for more than seven years, and long before it was incorporated in the city limits. When the property became a part of the city, the public highways became subject to the jurisdiction of the city. Elliott, Roads and Streets, 312 *et seq.* 329. By obstructing or abandoning the use of old roads and adopting the course of streets in lieu thereof and the use of said streets by the public, these streets were dedicated to public use.

19 Pick. 405; 50 Ark. 57. Seven years open and adverse use gave the public the right to continue to use the street. 50 Ark. 53; 51 *id.* 271; 47 *id.* 437; *Ib.* 66; 34 Ind. 497; 3 Zabriskie, (23 N. J. L.) 712.

2. But whether the street goes *through* the property or not, it goes *up to* the property on both sides, and thus *benefits* it. 2 Dill. Mun. Corp. (2nd ed.) sec. 634; 52 Ark. 107. Whether benefitted or not, it was for the city council to say what property should be embraced in the district, and the action of the council cannot now be questioned. Mansf. Dig. sec. 839; 42 Ark. 152.

3. The property is in the city. 44 Ark. 537; 34 Iowa, 194; 13 Gratt. 389; 2 Dill. Mun. Corp. (2nd ed.) secs. 491-495; 38 Ark. 87; 54 *id.* 372.

4. Interest, penalty and attorney's fees should have been allowed. Mansf. Dig. secs. 843-847.

BUNN, C. J., (after stating the facts.) The first question that confronts us is that submitted to us by the paragraph of the agreed statement of facts quoted above.

It seems that the main reliance of the appellant in the case of *Webster* v. *Little Rock*, 44 Ark. 537, was that this court would declare the act of April 28, 1873, unconstitutional, since it was by virtue of that act, if at all, his property and that of his co-plaintiffs, including the property herein involved, had been placed in the city of Little Rock, as being property coming under the description set forth in that act. This court, in the case of *Webster* v. *Little Rock, supra,* having under consideration the constitutionality of that act, and also the question as to whether or not, by its provisions, Marshall & Wolf's and Faust's additions to the city of Little Rock were not included in the city, held the act to be constitutional, and that said additions were all by its provisions included in the city, and say: "Lincoln's addition

is not named in his (the chancellor's) finding, but the effect of the decree is the same upon it as the others."

Elswhere in the opinion in that case, the court, by Judge Eakin, makes it appear that the inclusion of Marshall & Wolf's and Faust's additions in the city limits is dependent upon the inclusion of Lincoln's addition, for the patent reason that otherwise the first named additions, without Lincoln's addition, were not contiguous to the city, Hide street being the west boundary line theretofore. The court certainly held Lincoln's addition (including the Catholic property, or that in controversy) to have been placed in the city by the act. We think also that, aside from questions springing up from the force and effect of that and perhaps other acts of the legislature, the property in controversy has been regarded as, and in fact has been, a part of the city of Little Rock since the passage of that act, to-wit, April 28, 1873.

Without going into the inquiry whether or not Bishop street through and over this land (by reason of former acts of dedication by any of the owners of the ten acres, and of acceptance by the city,) has in fact become a street and highway of the city for public use, we leave that question to be solved in some more appropriate proceeding, and turn our whole attention to the status of Tenth street, as projected through this property, as this is the question at last.

It appears from the testimony of the witnesses in the case that a road over and across the land in controversy has been used by the public as far back in the past as the oldest person now living can remember; and, from the testimony of witnesses best and longest acquainted with the locality, that this was a public county road until the land became a part of the city of Little Rock, about twenty years ago, by virtue of the act of the legislature referred to; and that since that

time the travel has continued, first by roads changing
for convenience and availability (always over the tract
however) and gradually concentrating upon the location
known as "Tenth Street," as obstruction would be placed
in the other tracks and roads ; and that Tenth street
over said land has been opened to travel since its inclu-
sion in the city, and some say before that time.  Some
of the witnesses say that the public road, which was
known as the "Mt. Ida Road," was on the same ground,
substantially, as Tenth street, as it extends over this
property ; others say that the original public road going
west, after leaving the city at the intersection of Tenth
and High streets, inclined as much as forty-five degrees
south of west, but finally got back on the line of Tenth
street extended westward in front of the "Lincoln
House," three or four hundred feet west of the west
boundary of the land in controversy, as appears from the
plat which is a part of the transcript herein.  The
evidence is overwhelming and conclusive that the road
aforesaid, from a time many years antedating plaintiff's
ownership of the land, has run over and across the same,
and has been substituted by Tenth street, if not indeed
always of the same location as that street.  It further
appears that the streets, blocks and lines, as claimed by
appellees, into which the tract is divided, are in exact
conformity with the plat of the city, and that they have
furnished the data and basis upon which all descriptions
in conveyances made by plaintiff and his agent have been
predicated, and that all parties, seemingly, have treated
and dealt with the property as if it were city property
containing the subdivisions and streets aforesaid.  On
the other hand, the plaintiff says, in effect, that what-
ever in this direction has been done by him, was done for
convenience, and not to dedicate said street to the public,
as such ; that no such dedication has ever been made, to
his knowledge ; that, about the time he first heard of

the movement to create this improvement district, he built some houses on the northeast block of this property on High street, thereby stopping the public travel over said block, and compelling it to go down to Tenth street and along said street to where it intersects Bishop street, and thence southwest out of the city.

1. Jurisdiction of city over highways.

It is the law, now settled and recognized everywhere, that, as a city is extended so as to take in territory, the jurisdiction and control of the county over the highways in such territory is determined, and the city immediately becomes possessed of the same. Thus, when the land in controversy became a part of the city of Little Rock, the public road then leading over and through the same fell under the jurisdiction and control of the city, and the city became at once responsible for the condition of this road as a public highway. This is an easement which the public have, and the owner of the fee has no right to permanently and materially disturb it, and the easement continues in all its force when the road has become the highway of the city. Elliott on Roads and Streets, pp. 311–318, and authorities therein cited.

2. Effect of change of route of highway.

Again, it appears that there is some conflict in the testimony of witnesses as to the exact location of the county public road over the property before it was taken into the city; some saying that it was substantially the same as that of Tenth street, and others that it ran across the blocks as laid off in the plat. This, of itself, really makes no difference. In behalf of the city, to substitute Tenth street, as laid off and left open by the owner and his predecessors, for the public road, wherever it may have run, was more in harmony with its general plan, and therefore more convenient and desirable in many respects. In behalf of the owner, it is eventually more to his interest to concede the ground occupied by Tenth street than that the public should continue to cut up his lots and blocks by an irregular highway.

The long continued use by the public, before the institution of this suit, of Tenth street, as extended over the land, as a highway, in substitution for the original road, and the long acquiescence of the owner of the soil, amounts to a new dedication. *Hobbs* v. *Inhabitants of Lowell*, 19 Mass. 410 ; *Almy* v. *Church*, 26 Atl. Rep. (R. I.) 58 ; *Wyman* v. *State*, 13 Wis. 663 ; *Howard* v. *State*, 47 Ark. 437 ; *Patton* v. *State*, 50 Ark. 53.

In all such cases as this, it is considered that the public, primarily, has a right in the original road, but the public, at the invitation or by the acquiescence of the owner of the land, may adopt a new route, and its use of the same for the statutory period, without objection on the part of the owner, will be considered a valid substitution of the new location for the old. Any other rule would leave the owner in the attitude of a violator of the law when he has obstructed the old route in any way, for the public is entitled to the use of the one or the other.

We are of the opinion, therefore, that the chancellor erred in perpetuating the injunction against the appellee commissioners, their employees and agents, and that he did not err in decreeing the taxes levied by them to be a valid lien on the land designated.

The decree of the chancellor is reversed as to the perpetuation of the injunction, and affirmed as to said taxes and refusal to assess penalty and attorney's fee, and the cause is remanded for further proceedings in accordance herewith.