WILLIS *v.* CITY OF FORT SMITH.

Opinion delivered January 10, 1916.

1. MUNICIPAL CORPORATIONS—EXERCISE OF POWERS.—Municipal corporations can only exercise such powers as are expressly granted to them by the Legislature, and such as are necessarily implied for effecting the purposes for which the grant of power was made, and as incident thereto.

2. MUNICIPAL CORPORATIONS—CONTROL OF STREETS.—Municipal corporations have expressly been given control and supervision of the streets and highways within their limits. Kirby's Digest, § 5456.

3. MOTOR VEHICLES—REGULATION AND CONTROL BY STATE—RIGHTS OF MUNICIPAL CORPORATION.—The State has the right to regulate and control the use of motor vehicles, except as it has granted such right to other governmental agencies, and by section 13 of Act 134, of the Acts of 1911, the State has recognized the exclusive right of municipal corporations to make and enforce rules and regulations for motor vehicles used for public hire.

4. MOTOR VEHICLES—CONTROL BY MUNICIPAL CORPORATION—"JITNEY BUSSES."—A municipal corporation may require a bond from the operatives of motor driven vehicles, commonly called "jitney busses," in the sum of $2,500 for each vehicle, to indemnify any person injured by the operation of such motor vehicle.

5. [MOTOR VEHICLES—REGULATION OF "JITNEY BUSSES"—BOND—CLASSIFI-
CATION.—The regulation of jitney busses, as defined in a city or-
dinance as any "self propelled vehicle, operating for hire between
fixed points or places along designated or advertised streets, or
which shall be regularly operated along any portion of any particu-
lar street or streets," by the requirement of a bond for $2,500, from
the operator thereof, for the benefit of a person injured by the
operation of the same, is a reasonable classification of such vehicles,
and is not arbitrary or unreasonable.

Appeal from Sebastian Chancery Court, Fort Smith
District; *W. A. Falconer,* Chancellor; affirmed.

*T. J. Wear,* for appellant.

1. The right or power to enact the ordinance in
question was never directly or by implication delegated
to the city, and the ordinance is therefore *ultra vires,*
and void. Art 2, § § 12, 21 Const.; *Id.* Art. 12, § 4; 7 Cyc.
155 and note 57; 23 Am. Rep. 502; 48 S. W. 859; 16 S. W.
913; 1 Disn. (O.) 532; 89 Pa. St. 71, 40 Md. 312.

2. The ordinance is class legislation, discriminating
in its nature and in restraint of legitimate trade and busi-
ness. Const. U. S., Fourteenth Amendment, § 1; Art. 2,
§ § 18, 19, Const. Ark.; 118 U. S. 356.

3. It is against public policy, because (1) it is dis-
criminatory, and (2) it is contrary to the policy of the
general laws to require those who are engaged in a legiti-
mate business, notwithstanding there may be some dan-
gerous features to employees and individuals of the public
who are not careful, connected with it, to make indemni-
fying bonds to its employees or to the individuals of the
public.

4. It is contrary to the Constitution, in that it lim-
its the amount of recovery in case of injury or death to
twenty-five hundred dollars. Art. 5, § 31, Const.

5. The ordinance is not a reasonable regulation.
Dillon on Municipal Corporations (3 ed.), § 19; *Id.,* § §
393, 362, 374; 45 Ill. 90.

*Kimpel & Daily,* for appellee.

1. While, as contended by appellants, the ordinance
interferes to some extent with appellants' liberty and

with the beneficial use of their property, the same may be said of every police regulation; but the right of a municipality, in the proper exercise of the police power, to impose restrictions upon the individual, no longer admits of debate. 33 Ark. 442; 35 Ark. 356; 88 Ark. 353.

2. The city has not exceeded its authority in enacting the ordinance. The power to regulate *every description of carriages which may be for hire,* is specifically granted to municipal corporations by statute. Kirby's Dig., § 5454; *Id.*, § § 5438, 5448, 5456, 5530, 5532; 43 Ark. 82; 107 Ark. 174; 96 Ark. 119; 74 Ark. 194. The proviso to Act 134, Acts 1911, if not itself a grant of authority, is at least a legislative recognition of a power already granted.

3. The ordinance is not discriminatory. The jitney business is a class distinct in itself, and different in many respects from the business of the taxicab, which has a regular stand and from that stand goes on call to any part of the city. It has repeatedly been held that it is proper for cities, in the exercise of their police power, to classify, provided the classification applies to all persons similarly situated. 107 Ark. 182; 85 Ark. 465; 207 U. S. 251. The term "jitney" is defined in the ordinance, and the ordinance operates upon all cars coming within that category.

4. The argument that this legislation is unwise, uncalled for and unnecessary, is not tenable. That is a question for the legislative body and not for the courts, unless there is a clear abuse of discretion. 88 Ark. 353; 195 U. S. 223; 64 Ark. 152; 101 Ark. 223.

5. The ordinance does not create a civil duty. It does not attempt to define or declare what shall or shall not constitute negligence on the part of a jitney owner, nor when nor under what circumstances individuals can recover damages from him. It does not limit the amount of damages recoverable against a jitney owner or operator, and the requirement, as a condition precedent to engaging in this business, of a bond in the sum of $2,500 conditioned that, to the extent of this amount at least,

the principal or his sureties will satisfy any final judgment recovered against the principal because of the negligent operation of his jitney, is a proper exercise of the power of regulation. Frund on Police Power, par. 40, and authorities cited; 147 Pac. 1159; 225 Fed. 812; *Le Blanc et al.* v. *City of New Orleans,* 70 Sou. 212, June 28, 1915; 150 Pac. 348; 85 S. E. 781; 178 S. W. (Tex.) 537: 178 S. W. (Tex.) 6.

KIRBY, J.   This appeal challenges the validity of an ordinance of the City of Fort Smith regulating the operation of "jitneys" and "jitney busses" it being contended that said ordinance was beyond the power of the city to make, and that it is unconstitutional and void.   The ordinance provides:   Section 1, that each person, firm or corporation who desires to operate a jitney in or over any of the streets in the City of Fort Smith, shall first execute and file with the clerk, a bond in the penal sum of $2,500 for each jitney, with sufficient sureties to be approved by the board of commissioners, conditioned, "that the principal of said bond will promptly pay any final judgment which may be recovered against said principal, or his agent or employees."   Said bond shall run in the name of the City of Fort Smith for the use and benefit of any person or persons who may recover any such judgment.   It also makes provision for renewal thereof. The second section restricts the number of persons who may be carried in the jitney and makes it unlawful to carry a greater number.   Under the third section, they are not permitted to be stopped on "street crossings," which term is defined.   The fourth section fixes the license for each jitney carrier at $20 per annum and $12.50 for six months, payable in advance and makes it unlawful to operate any jitney without first having paid the license.   Section five defines the term "jitney" to include any and all self propelled vehicles, operating for hire between fixed points or places along designated or advertised routes, or which shall be regularly operated along any portion of any particular street or streets.

Section six prescribes the penalties for violation of the act.

(1-2)    Municipal corporations can only exercise such powers as are expressly granted to them by the Legislature and as are necessarily implied for effecting the purposes for which the grant of power was made and as incident thereto. Such corporations have expressly been given control and supervision of the streets and highways within their limits. Section 5456, Kirby's Digest; *Sanderson* v. *Texarkana,* 103 Ark. 534; *Fitzgerald* v. *Saxton,* 58 Ark. 494; *Hughes* v. *Ark. & Okla. Rd. Co. et al.,* 74 Ark. 194.

Section 5454, Kirby's Digest provides: "They shall have the power * * * to regulate all carts, vehicles, drays, hackney coaches, omnibuses and ferries, and every description of carriages, which may be kept for hire, and all livery stables."

Section 13 of the motor vehicle law, Act 134 of the Acts of the General Assembly of 1911, expressly provides that municipal corporations shall not have power to restrict the use or speed of motor vehicles, except as provided in the act and further that "nothing in this act contained shall be construed to affect the power of municipal corporations to make and enforce ordinances rules and regulations affecting motor vehicles, which are used within their limits for public hire."

(4)    The State has the right to regulate and control the use of motor vehicles except as it has granted such right to other governmental agencies, and it expressly recognizes in the motor vehicle law the exclusive right of municipal corporations to make and enforce rules and regulations for motor vehicles used for public hire. The definition of the term and use of the jitney as a conveyance brings such instrumentality within the operation of the provisions of said section 5454 of Kirby's Digest, giving such corporations express power of regulation of every description of carriages which may be kept for hire. The municipal corporation therefore has all the power that belonged to the State for regulation of the operation

of machines and instrumentalities of the kind included in the ordinance, and unless such ordinance was beyond the authority of the State to grant, it was not beyond the power of the city to make. The regulation of such vehicles and traffic comes under the police power and it is generally recognized that such regulations are a proper exercise of that power. The jitney bus business, transporting people for hire, for a uniform five cent fare in low priced or second hand automobiles over definite routes in cities or towns, is of but recent origin, but the regulation of the business followed hard upon its development by acts of the Legislature in some instances and by ordinances of the municipalities, in which they operated in others. The question of such regulation has been passed upon by the courts of the states of California, West Virginia, Tennessee, Texas and Louisiana, all holding that the business was in effect a common carrier of passengers for hire and necessarily subject to regulation by the State and its authorized agencies. *Ex parte Cardinal,* (Cal.) 150 Pac. 348; *Ex parte Dickey,* 85 S. E. (W. Va.) 781; *Ex parte Sullivan,* 178 S. W. (Tex.) 537; *Green* v. *City of San Antonio,* 178 S. W. (Tex.) 6; *City of Memphis* v. *State, ex rel. Ryals,* 179 S. W. 631; *Le Blanc* v. *New Orleans,* 70 Sou. (La.) 212.

The contention that the requirement of the execution of a bond for the payment of judgments is a restriction the municipality was not authorized to impose, it creating in effect a civil liability, is without merit.

In *Little Rock* v. *Reinman,* 107 Ark. 174, the court in discussing the term "regulate" said: "The State in the exercise of its police power has given to the city the power to regulate certain callings, pursuits, trades and business, as specified in said section of the statutes. The power to regulate gives authority to impose restrictions and restraints upon the trade or business regulated. 'Regulate' means 'to direct by rule or restriction, to subject to governing principles or laws.'"

The requiring of such bond for the payment of judgments for damages resulting from the negligent opera-

tion of the jitneys for the benefit of those injured thereby, does not create a liability where none existed under the law, nor was it intended to do so, but only to secure the payment of damages for such injuries from operatives of instrumentalities that were so dangerous as to require the prescribed regulation and appeared to the city council so irresponsible as to make necessary the restriction for the security required.

The requiring of the execution of bonds by the operators of such conveyances has been held a valid exercise of the police power and within the authority of the State and its governmental agencies, municipal corporations, under the grant of authority thereto in the above cited cases.

(5) It is next contended that the ordinance is discriminatory class legislation in restraint of trade and denying to the operators of jitneys and jitney busses the equal protection of the law contrary to provisions of the Constitution. It is insisted that the jitneys as operated are not more dangerous than taxicabs, or other motor vehicles used and kept for hire and that they should no more be required to give the bond than such vehicles and street cars operated upon the streets of the city.

When a classification of subjects is made by legislation, such classification must rest on some substantial difference between the classes created and others to which it does not apply, but where the statute or ordinance appears to be founded upon a reasonable basis and operates uniformly upon the class to which it applies, it can not be said to be arbitrary and capricious. *Helena* v. *Dunlap,* 102 Ark. 131; *Chicago, R. I. & P. Ry. Co.* v. *State,* 86 Ark. 412; *McLean* v. *State,* 81 Ark. 304.

The authorities already cited from other jurisdictions support the proposition that the regulation of jitneys by the requirement of the bond is a reasonable classification of such vehicles and we hold that such classification in this ordinance is not arbitrary nor unreasonable, but bears a just relation to the purpose attempted to be effected, and classification made.

The decree is affirmed.