STREET IMPROVEMENT DISTRICTS Nos. 481 AND 485
*v.* HADFIELD.

Opinion delivered November 9, 1931.

*Lawrence C. Auten,* for appellant.
*Linwood Brickhouse,* for appellee.

HART, C. J. This is an appeal from a judgment of a circuit court denying certain street improvement districts in the city of Little Rock a writ of mandamus to compel the treasurer of the city of Little Rock to set aside to them certain road taxes collected by him on property within the limits of the city under the provisions of act 66 of the

Legislature of 1931. The act was approved February 26, 1931, and is an act to grant to cities of the first class in counties having a population of 125,000 or more, fifty per cent. of the taxes collected on property in such cities and to aid improvement districts wholly within such cities. Acts of 1931, p. 186.

Section 1 of the act reads as follows: ''The tax collector and county treasurer of each county now or hereafter having 125,000 or more inhabitants, according to the most recent federal census, shall, on or before October 1st in each year, pay to the city treasurer of each city of the first class in the county, 50 per cent., or the percentage now being paid if it exceeds 50 per cent., of all road taxes and delinquent road taxes collected by them respectively on property within the corporate limits of the city. The term 'road taxes' shall embrace all road taxes, including the three-mill road tax, the $4 per capita tax, and every other road tax levied in the county, the expenditure of which the Legislature is authorized to direct, and which have not already been allotted by law to particular street improvement districts.''

Section 2 provides that the city treasurer of each city affected by § 1 of the act, having outstanding valid bond issues, shall at quarterly periods set aside in a special fund to be known as the ''Street Improvement Bond Redemption Fund,'' one-half of all road tax funds received from the county collector and county treasurer, and one-half of all funds derived from city automobile, truck, or other vehicle license taxes, to be used in paying the bonds, with interest thereon, of such improvement districts.

Section 3 provides that the city clerk shall annually ascertain the dates of issuance and of maturities of all outstanding bonds issued by each improvement district affected by the terms of the act.

Section 4 provides that on October 1st the city clerk shall certify to the board of commissioners of each improvement district the amount of the fund apportioned to the district for the ensuing year.

. Section 5 provides that improvement districts that are not wholly within city limits and those whose bonds were issued prior to February 4, 1927, shall not come under the provisions of the act.

Section 6 provides that compliance with the act may be enforced by mandamus.

The complaint of the improvement districts for the writ of mandamus was denied by the court, and the complaints were dismissed on the ground that the act was unconstitutional as being in violation of amendment No. 14 to our Constitution, initiated by the people in 1926 and adopted at the general election held in that year, which provides that the General Assembly shall not pass any local or special act.

The general rule is that classification is properly based on population when reasonably adapted to the subject of the statute. Otherwise the classification by population is special legislation. Other circumstances than population may be made the basis of classification when reasonably germane and pertinent to the subject-matter. 36 Cyc., pp. 1004-1006, and cases cited; 25 R. C. L., § 66, p. 817, and cases cited.

The authorities generally hold that classification of cities and towns by population can not be arbitrarily adopted as a ground for granting some of them powers denied to others if, although there be a difference in population, there is no difference in situation or circumstances · of the municipalities placed in the different classes, and the difference in population has no reasonable relation to the purposes and object to be attained by the statute. *L'Hote* v. *Village of Milford,* 212 Ill. 418, 72 N. E. 399, 103 Am. St. Rep. 234. In that case the court quoted with approval from one of its former opinions the following:

"The rule is that a classification cannot be adopted arbitrarily upon a ground which has no foundation in difference of situation or circumstances of the municipalities placed in the different classes. There must be some reasonable relation between the situation of munici-

palities classified and the purposes and objects to be attained. There must be something in the nature of things, which in some reasonable degree accounts for the division into classes.''

The court again held that an arbitrary classification upon a ground which had no foundation in difference of situation or circumstances could not be adopted.

Sometimes it is difficult to make a proper application of the rule to the facts of a given case, but the rule itself is so well established in this State that we need only cite a few of our cases in support of it. *Little Rock* v. *North Little Rock,* 72 Ark. 195, 79 S. W. 785; *Ark-Ash Lumber Co.* v. *Pride & Fairley,* 162 Ark. 235, 258 S. W. 335; *McLaughlin* v. *Ford,* 168 Ark. 1108, 273 S. W. 407; *LeMaire* v. *Henderson,* 174 Ark. 936, 298 S. W. 327; *Webb* v. *Adams,* 180 Ark. 713, 23 S. W. (2d) 617; and *Simpson* v. *Matthews, ante* p. 213.

In the case first cited, the court had under consideration a statute allowing municipal corporations to be annexed and made part of other municipal corporations located within one mile of the municipal corporation to which the same was to be annexed upon compliance with the provisions of the act. It was contended that this was a special act and violated the provisions of the Constitution which prohibits the Legislature from creating municipal corporations and conferring corporate powers by special act. The court held that the classification made by the statute was not arbitrary and unreasonable. It was pointed out that there were at present at least two different localities in the State which came within the statute, and that towns which were situated within a mile of each other might be conveniently annexed while municipalities separated by greater distances could not be conveniently consolidated or annexed to each other. Consequently, the court said that the positions of the towns and cities embraced in the act in relation to each other distinguished them from other municipalities not so situated, and that situation under the circumstances was a reasonable basis for classification. In this connection,

it may be said that laws properly classifying cities and towns for organization and for the purposes of civil government are general in their nature. The reason is that in such cases population is a reasonable basis for classification because the density of population in cities makes it necessary to give them additional powers in the administration of the affairs of such cities. In such cases the law operates equally upon all cities wherever situated in the State which fall within the class, and the population of the county does not enter into such classification.

In *Harwood* v. *Wentworth,* 162 U. S. 547, 16 S. Ct. 890, the Supreme Court of the United States sustained a salary act for the Territory of Arizona as being general in its operation. The counties were classified for the purpose of fixing the salaries of the county officers according to population, wealth and other things which were calculated to furnish a reasonable basis for classification.

In the present case, no substantial or appropriate reason is given or is apparent to us for the distinction in legislation of this kind between cities of the first class in counties having 125,000 inhabitants or more and those in counties of a less number of inhabitants. The subject-matter of the legislation was to give certain designated cities fifty per cent. of all road taxes collected on property within their limits and to set aside a special fund for one-half of these road taxes received from the county collector to be used in paying improvement district bonds. There is nothing in the terms of the act to distinguish the cities included from those excluded, and making the legislation fit and appropriate to those included and inappropriate to the conditions of those excluded so as to be of no benefit to them. By this act preferences and advantages are given to municipal corporations simply because they are in Pulaski County, which is the only county in the State with a population of 125,000 or more. There would be no good reason. in the nature of things, why cities of the first class situated in counties having a smaller population than 125,000 should not have one-half of the road fund derived from property within their limits in like

manner as the cities in Pulaski County. It is therefore an arbitrary and unnatural classification of municipalities coming under the same general class and not materially differing in needs and requirements and exercising the same general powers in other respects. *People* v. *Knopf,* 183 Ill. 410, 56 N. E. 155; Scowden's Appeal, 96 Pa. St. 422; *State* v. *City of Trenton,* 42 N. J. 486; *State* v. *Weakley,* 153 Ala. 648, 45 So. 175.

In the Illinois case just cited, the act provided that in counties having a population of over 125,000, the aggregate rate of taxation should not exceed 5 per cent. and the county school and municipal tax rate should be scaled *pro rata,* if necessary to bring the aggregate rate within that limit. The act was held void as special legislation because it made a class of cities, towns and school districts in such counties without any reasonable grounds therefor. In discussing the question, the court said:

"By this act restrictions are put upon cities, townships, school districts, and other municipal corporations simply because they are within Cook County, which is the only county in the State with a population of more than 125,000. There can be no reason, in the nature of things, why a city, village, school district, or other public or *quasi* public corporation in that county should be deprived of powers that a similar corporation situated in some other county is permitted to exercise. It is an arbitrary and unnatural classification of municipalities not different in population, needs, or requirements, and exercising the same general powers in other respects."

In the New Jersey case cited, it was held that a statute purporting to confer upon all cities having a population of not less than twenty-five thousand inhabitants the power of issuing bonds to fund their floating debt was a special law, and in violation of the constitutional amendment which forbids the passing of special laws to regulate the internal affairs of towns. In discussing the question, the court said:

"The basis of classification is a minimum of population. The powers to be conferred by the statute concern

the issue of bonds for the purpose of funding floating debts. Now, I am unable to see any natural connection between the number of people in a city and its right to fund its floating debt. It is true that there may be some propriety in denying this authority to very small municipalities and granting it to larger ones, but the same may be said of almost every power usually possessed by cities. And it is manifest that if the classification made by a statute is to be justified or not by considering whether it is proper to apply the peculiar provisions of the law to the particular individual or individuals designed to be affected, then laws will be upheld or overthrown, not as the court shall decide them to be general or special, but as they shall deem wise or unwise. No rule heretofore laid down in this State sanctions such a test of constitutionality, nor do I think that such a criterion should be adopted.''

In the Alabama case just cited, the act under consideration provided for the establishment of police commissions ''in cities of 35,000 population or more, in counties of 125,000 or more population, and to define their terms of office, duties and powers.'' The court said that a statute in part was applicable to but one city, and that it was unconstitutional as not being a *bona fide* classification of cities.

The court said:

''The act in question was in no sense a classification of counties, as its manifest object is to create a police board in cities, and pertains in no way to the regulation of counties. Nor is it a *bona fide* classification of cities, as it expressly excludes cities of the same class, unless located in a county of a certain size. While there are cities in Alabama other than Birmingham with the necessary population, Birmingham is the only one located in a county with a population of 125,000. The substance of the act is for the sole purpose of regulating conditions in Birmingham, although the act is disguised in the garb of a general law. While we do not wish to recede from our former decisions on this subject, and do not intend by this

opinion to give the backing signal, we do not think the subject and occasion appropriate for an application of judicial brakes, else § 110 of the Constitution will be absolutely emasculated. The act in question being local, although under the attempted guise of a general law, is repugnant to § 106 of the Constitution, for the reason that no notice was given of the intention to apply for the enactment of same.''

In the case before us, the question whether the act has effect or not in any particular city of the first class is determined by the number of inhabitants of the county in which it is situated and by nothing else. As said in *Van Riper* v. *Parsons,* 40 N. J. Law (11 Vroom) 1, the object of this amendment of the Constitution is to exterminate root and branch special and local legislation, and to substitute general law in the place of it in every instance where such substitution can be effected. In this case the court also said:

''All legislation is based, of necessity, on a classification of its subjects, and when such classification is fairly made, and the legislation founded upon it is appropriate to such classification, such legislation is as legitimate now as it would have been prior to the recent amendments to the Constitution.''

It is equally well settled that the doctrine of classification is not to be extended for the purpose of evading the requirements of the Constitution. The legislative classification in the act before us is not germane to the subject-matter. The object of the statute was to benefit cities of the first class in a certain locality by giving them 50 per cent. of the road taxes collected on property within their corporate limits and one-half of the fund to be derived from city motor vehicle license taxes, and to aid improvement districts in such cities in the payment of their bonds, where the bonds were issued since February 4, 1927. The subject-matter of the act did not relate to counties at all. The effect, limiting or restricting the benefits provided by the act to cities of the first class in counties having 125,000 or more population, is

606

to localize the legislation, for such classification is not founded on any real or apparent difference in the situation or condition of cities of the first class. The needs of cities of the first class for relief of this sort does not depend upon the population of the counties in which they are situated. The court will take judicial notice from the United States census reports that Pulaski County has a population of 137,727, and that it is the only county in the State having 125,000 or more inhabitants, or which will likely have at any reasonable time in the future. It has two cities of the first class, and their situation and condition as to the subject-matter of the legislation is not different from that of other cities of the first class in the State. The fact that they are situated in Pulaski County has no reasonable pertinency as to their needs or circumstances with reference to receiving road taxes or vehicle license taxes. It is no answer to say that such taxes are collected from property and vehicles within the city limits, for this would be the case in every city of the first class within the State.

Therefore we are of the opinion the classification does not bear any reasonable or just relation to the subject-matter of the act, and is arbitrary and unreasonable.

For these reasons, the circuit court correctly held that the act under consideration was a local act, and unconstitutional, as being prohibited by amendment No. 14 to the Constitution, and the judgment will be affirmed.

SMITH and KIRBY, JJ., dissent.