BOLLINGER *v.* WATSON.

4-3285

Opinion delivered October 16, 1933.

*Evans & Evans,* for appellant.

*Earl R. Wiseman, Hal L. Norwood,* Attorney General; and *Pat Mehaffy,* Assistant, for appellee.

BUTLER, J. The General Assembly of 1921 passed act No. 606, the first section of which provides: "That all persons, firms or corporations who shall sell gasoline, kerosene, or other products to be used by the purchaser thereof in the propelling of motor vehicles, using combustible type engines over the highways of the State, shall collect from such purchaser in addition to the usual charge therefor, the sum of one cent per gallon for each gallon so sold." This section has been retained in all subsequent legislation except as to the amount to be levied on motor fuel, and at the regular session of the Legislature of 1923, act No. 501 was passed, retaining the above section except as to difference in the amount per gallon levied with the following additional paragraph: "Provided, however, that whenever there are adjoining cities or incorporated towns, which are separated by a State line, the tax on lubricating oils and gaso-

line, sold by any dealer in such adjoining city, on the Arkansas side of the State line to the owner or owners of a motor vehicle or vehicles for immediate use therein, shall be at the rate as provided by law in such adjoining State, not to exceed the rate herein provided for in this act.''

In that act it was also provided that if the above proviso should be held to be unconstitutional, it was the intention of the Legislature that the act be upheld with the proviso eliminated. These provisions passed through the Legislatures of 1927 and 1929, and finally appear in act No. 63 of the Acts of 1931 as paragraphs ''C'' and ''D'' of § 1 thereof, which, together with paragraphs ''E'' and ''F'' are challenged by the present appeal as violative of Amendment No. 14, Arkansas Constitution, of the Fifth Amendment to the Constitution of the United States and of § 8, article 2 of the Constitution of Arkansas, and also, as prohibited by the Fourteenth Amendment to the Federal Constitution and § 18, art. 2 of our Constitution.

The paragraphs challenged read as follows:

''(c) There is hereby levied a privilege tax of six cents on each gallon of motor vehicle fuel sold in the State or purchased for sale in the State for the purpose of propelling any motor vehicle on the public roads or highways in the State.

''(d) Where there are adjoining cities or incorporated towns which are separated by a State line, the tax on motor vehicle fuel sold by any dealer in such adjoining city on the Arkansas side of the State line to the owner or owners of a motor vehicle or vehicles for immediate use therein shall be at the rate as is provided by law in such adjoining State, such rate not to exceed the rate in this act provided. Provided, however, where the State line is the center of the main channel of the Mississippi River this provision does not apply.''

The Fifth Amendment to the United States Constitution and § 8, article 2 of the Arkansas Constitution are practically identical, both providing that no one shall be deprived of life, liberty or property without due proc-

ess of law. Section 18, art. 2 of our Constitution, provides that "the General Assembly shall not grant to any citizen or class of citizens privileges or immunities which upon the same terms shall not equally belong to all citizens." The Fourteenth Amendment to the Federal Constitution may be said to be the antithesis of this, providing that "no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The section quoted from the act of 1921 was attacked as in violation of the above constitutional provisions. In the case of *Standard Oil Company of La.* v. *Brodie,* 153 Ark. 114, 239 S. W. 753, it was held that the act did not violate any of the constitutional provisions, *supra.* In the case at bar, in addition to the attack on the constitutional grounds stated, it is contended that the act is a local and special one, and therefore comes within the inhibition of Amendment No. 14 to the Constitution of Arkansas, which prohibits the Legislature from passing any local or special laws. It is argued that the rule promulgated by the Highway Commission under authority of act No. 63 and putting into effect paragraph (d), *supra,* excepts from the general provisions of the act as stated in paragraph (c), the towns of Texarkana, Fort Smith, Blue Eye, Mammoth Spring, and St. Francis; that, as the tax in the State of Oklahoma is four cents per gallon, the citizens in the city of Fort Smith are required to pay only four cents per gallon on motor fuel; as the rate in Missouri is two cents per gallon, the citizens of Blue Eye, Mammoth Spring and St. Francis are required to pay only two cents; and as the rate in Texas is three cents per gallon, the citizens of Texarkana are required to pay only three cents; that the effect of the provision of paragraph (d) renders the act local or special.

To support this contention the appellant cites and relies on the cases of *Webb* v. *Adams,* 180 Ark. 713, 23

S. W. (2d) 217; *Simpson* v. *Matthews,* 184 Ark. 213, 40 S. W. (2d) 991; *Street Imp. Dist.* v. *Hadfield,* 184 Ark. 598, 43 S. W. (2d) 62; *Leonard* v. *Luxora-Little River Road Maintenance, ante* p. 599. In the first mentioned case the act under consideration provided for optional county unit or a consolidated school system operating equally and uniformly throughout the State, but with a proviso that "the provisions of this act shall in no way apply to, or affect, Gosnell Special School District in Mississippi County, Arkansas; provided, also, that the provisions of this bill shall not apply to Faulkner and Sharp counties."

The act in question in the case of *Simpson* v. *Matthews, supra,* provided for the formation of improvement districts for the purpose of constructing dams and reservoirs and for the condemnation of lands within the areas affected, and further, that the act should apply only to counties which now or hereafter may have a population of 75,000 inhabitants according to the last federal census.

In *Street Imp. Dist.* v. *Hadfield, supra,* the act under consideration provided that the collector and county treasurer of each county which then had, or which should thereafter contain, 125,000 or more inhabitants, should pay to the city treasurer of each city fifty per cent. of all road taxes and delinquent road taxes collected by them, respectively, on property within the limits of such city; and that improvement districts not wholly within the city limits and those whose bonds were issued prior to February 4, 1927, should not come within the provisions of the act.

In *Leonard* v. *Luxora-Little River Road Maintenance, supra,* the act attacked on constitutional grounds provided for the division of certain revenues among all the counties of the State on a certain stated basis, but contained a proviso that the general provisions of the act should not apply in counties having more than one judicial district and a population of not less than $65,000, and that in those counties the funds should be divided

between the judicial districts on another and different basis.

In holding all of these acts local and special and within the prohibition of the 14th Amendment, a principle applicable to all and before announced in the case of *LeMaire* v. *Henderson,* 174 Ark. 936, 298 S. W. 327, is recognized and stated. This principle recognizes the power of the Legislature to enact a valid law which will not be deemed to be a local or special one because it does not operate alike throughout the State, when it does apply to the whole State in its material and important features; that is to say, that a reasonable classification may be made with respect to the localities or classes of citizens upon which the law may operate, and that it is not the form, but the operation and effect, which determines its constitutionality.

In discussing the effect of the constitutional prohibition against the passage of local or special acts in the case of *Simpson* v. *Matthews, supra,* the court said: "We do not think that it was intended to do away with the classification of counties, cities and towns according to population or the topography of the country where such classification rests upon substantial differences in situation and needs. The amendment was intended to prevent arbitrary classification based on no reasonable relation between the subject-matter of the limitation and classification made. In determining whether a law was general or local, the Legislature might still make the classification where it was appropriate and germane to the subject, and was based upon substantial differences which make one situation different from another. The classification of counties and municipalities is legitimate when population or other basis of classification bears a reasonable relation to the subject of the legislation, and the judgment of the Legislature in the matter should control unless the classification is arbitrary or is manifestly made for the purpose of evading the Constitution." Applying this principle, the court, in the case of *Webb* v. *Adams, supra,* held that the statute made no attempt at classification, and that the exemption of two counties from its

application did not constitute any reasonable basis for classification for school purposes.

In *Simpson* v. *Matthews, supra,* the court held that the construction of dams and reservoirs was a subject not germane to a classification by population and took judicial knowledge that only one county in the State could come within the provisions of the act, or that any other county would likely do so within any reasonable future time, and that the classification construed with reference to the purposes of the act was a mere subterfuge to escape the provisions of the amendment and to thereby exclude all counties except one from its operation.

In *Street Imp. Dist.* v. *Hadfield, supra,* it was found that the subject-matter of the act did not relate to counties at all, and the effect of limiting its benefits to cities of the first class in counties having a population of 125,000 or more was to localize the legislation, for the classification was not founded on a real or apparent difference in the situation or condition of other cities of a like class, and judicial knowledge was taken that under the provisions of the act it could relate to only one county and could not relate to any other within any reasonable time in the future.

The act involved in the case of *Leonard* v. *Luxora-Little River Road Maintenance, supra,* was found by the court to be a subterfuge to evade the provisions of the amendment; that it could apply to but one county in the State, and that in the nature of things it could likely never apply to any other; that the classification by which this county received a distribution from the highway fund on a different basis from that of others was an arbitrary and unreasonable classification.

Having in mind the principles stated in the cases reviewed and recognizing the cardinal canon of construction that a statute will be upheld unless clearly within constitutional inhibition and where that question is doubtful the doubt must be resolved in favor of the constitutionality of the act, we have no difficulty in upholding the act in question when the end sought to be attained by the Legislature is considered. The purpose of the legislation, as stated in the Brodie case, was to impose

a tax for the use of the highway to be measured by the extent of the amount of motor fuel consumed in motor-driven vehicles, and the object was to obtain revenue for the building and maintenance of the highway system. All persons who used the roads are benefited by the results made possible from the revenues collected by the gasoline tax, and the more revenue obtained, the greater the benefit. The legislation had in mind that the rate of taxation on motor fuel was much lower in some of the bordering states than in this, made possible because of their greater wealth and population. It took into consideration the well-known human trait of getting as much for as little as possible, and therefore recognized that the inhabitants of the border towns and cities would drive across the State line and purchase fuel in the adjoining State, thereby depriving this State of all revenue from the operation of cars. To meet that situation by virtue of paragraph ''D,'' those border towns were placed in a separate classification, and, while under the operation of the general act, it did not operate upon them in the same degree as upon citizens residing elsewhere. This classification was not arbitrary, but made necessary by the situation and bore a reasonable relation to the purpose and object sought to be accomplished by the act.

We are of the opinion that there is no ground for the contention that the act violates the due process clause of the Federal and State Constitutions, or that it comes within the inhibition of the 14th Amendment to the Federal Constitution or § 18, art. 2, of the State Constitution, above set out. It is not to be doubted that the right to acquire and possess property is one of the privileges and immunities of a citizen which the State may not infringe or abridge, or so legislate as to make the same unequal. These, however, are subject to such restraints and classifications as government may justly prescribe for the general good of the whole. It is not to be presumed that the State has any favors to bestow, or that it designs to inflict any arbitrary deprivation of any right. Discriminations between certain persons or classes is obnoxious to the genius of our government, and it is always to be presumed that no discrimination or abridg-

ment of any fundamental right is contemplated or designed by a Legislature, and a law should not be held unconstitutional because of discrimination or because of some arbitrary deprivation of a right unless there is no rational doubt that it improperly discriminates or arbitrarily destroys some right.

As is said in *Magoun* v. *Ill. Trust & Savings Bank,* 170 U. S. 283, 18 S. Ct. 394: ''This court has repeatedly laid down the doctrine that diversity of taxation, both with respect to the amount imposed and the various species of property selected either for bearing its burdens or from being exempt from them, is not inconsistent with a perfect uniformity and equality of taxation in the proper sense of those terms; and that a system which imposes the same tax upon every species of property, irrespective of its nature or condition or class, will be destructive of the principles of uniformity and equality in taxation and of a just adaptation of property to its burdens. * * * There is therefore, no precise application of the rule of reasonableness of classification, and the rule of equality permits many practical inequalities. And necessarily so. In a classification for governmental purposes there cannot be an exact exclusion or inclusion of persons and things.'' As has been aptly said: ''Government is not a simple thing. It encounters and must deal with the problems which come from persons in an infinite variety of relations. Classification is the recognition of those relations, and in making it a Legislature must be allowed a wide latitude of discretion and judgment. This has been decided many times against contentions based on a variety of facts.'' In the application of these principles many laws have been approved as not in violation of the constitutional provisions under discussion. Notably, among them, is that approved in the case of *Cumming* v. *Board of Education,* 175 U. S. 528, 20 S. Ct. 197, upholding a law of the State of Georgia which provided for the support of certain schools for white children out of the tax raised for public school purposes, and which ignored the negro schools when it had before maintained out of such funds a school of like class for negro children. This

act was passed for economic reasons, and, in affirming the holding of the State court, the Supreme Court of the United States held that under the circumstances disclosed it could not be said that there was a discrimination between citizens because of their class on account of race.

There are many cases illustrating the wide latitude to be given Legislatures in enacting legislation and upholding their acts where there is some discrimination on the ground that it frequently is impossible to impose the same burden upon every species of property without regard to its nature, condition or class. Among these cases are *Clark* v. *Kansas City,* 176 U. S. 114, 20 S. Ct. 284; *Gundling* v. *Chicago,* 177 U. S. 183, 20 S. Ct. 633; *Petit* v. *Minn.,* 177 U. S. 164, 20 S. Ct. 666; *Williams* v. *Fears,* 179 U. S. 270, 21 S. Ct. 128; *American S. R. Co.* v. *La.,* 179 U. S. 89, 21 S. Ct. 43.

It is no discrimination where the burdens of legislation rest unequally, where the subjects are of different classes, provided the classification rests on substantial difference, and, where the statute is founded upon a reasonable basis, it is sufficient if it operates uniformly upon the class to which it applies. *Willis* v. *Ft. Smith,* 121 Ark. 606, 182 S. W. 275.

The legislation here involved affects equally all of those residing in the border towns according to the tax prescribed by the State upon which they border. These constitute one class, and the act operates uniformly in all other sections of the State, and this constitutes another and different class.

It is argued that the act deprives the appellants of substantial property rights; that they had established their places of business without the limits of the border towns and within adjacent territory, and the practical working of the law prevented them from selling motor fuel as they must sell it with a six-cent. per gallon tax while the motorists, by driving a few miles more, could purchase it at a lower rate. The answer to this is that they could do this without the provisions of paragraph "D" for they would only have to drive across the State line into the adjoining State, and therefore there would

be no practical difference in their condition with or without the law.

It is our opinion that the decree of the court below upholding the validity of the act is correct, and it is therefore affirmed.