The Honorable Sarah S. Agee State Representative 11898 Sage Road Prairie Grove, AR 72753-9168
Dear Representative Agee:
This is in response to your request for an opinion on the following question:
 [S]ervice stations that are located on the Arkansas-Oklahoma or the Arkansas-Missouri line are able to offer lower prices on their pumps than those 15 to 20 miles inside the state line. Their distributors are telling the owners of the stations located inside the state that they must pay more taxes. The stations located on the borders are receiving tax exemptions in order to compete with those other states. It is causing prices to be approximately $. 08 to $.10 higher in some locations. Do the tax exemptions conflict with the Arkansas Constitution?
RESPONSE
So long as the statute authorizing this differential, A.C.A. §26-55-210, is founded upon a reasonable basis, the legislation should be deemed constitutional by a finder of fact. The Supreme Court has in the past found similar legislation reasonable and hence constitutional. Only a finder of fact can determine whether the tax as actually administered accords with the statutory requirements.
Section 26-55-210 of the Arkansas Code provides:
 (a)(1) The tax on motor fuel sold in cities, incorporated towns, or planned communities which border on a state line or sold within eight hundred feet (800') of the state line or sold within eight hundred feet (800') of the maximum shore line of a navigable lake, the opposite shore line of which is beyond the Arkansas state line or sold within eight hundred feet (800') of the Arkansas terminal of a bridge spanning a river where the state line is in the center of the main channel of the river, where such sales of motor fuel are made therein and delivered into the storage tanks of retail dealers or where such sales are made therein to consumers and delivered into the storage tanks of such consumers or directly into the standard fuel tank of a motor vehicle, shall be at the same rate as the tax levied on motor fuel sold in other areas of the state; but in no event shall the rate of tax on motor fuel sold in such border areas be more than one cent (1¢) per gallon above the rate of tax levied in the adjoining state.
 (2) Further, no existing city or incorporated town, the corporate limits of which did not on August 1, 1941, or planned community, the limits of which did not on May 18, 1965, extend to within two (2) miles of the state line, shall take advantage of such border rate.
 (3) Additionally, no tax is imposed upon or in respect to the transactions exempt from taxation under § 26-55-207.
 (4) The tax on motor fuel sold from any establishment adjacent to a federal interstate highway and within one (1) mile of a state line shall be at the rate of tax levied in the adjoining state but not exceed the rate levied in this subchapter.
 (b) Whenever any bridge spanning a river where the state line is in the center of the main channel of the river as defined and subject to the provisions of subsection (a) of this section shall have been or shall be abandoned, redesigned, relocated, or otherwise changed so that areas previously within eight hundred feet (800') of the Arkansas terminal of a bridge spanning a river where the state line is in the center of the main channel of the river shall, in whole or in part, no longer be within eight hundred feet (800') of the Arkansas terminal of such bridge, then the tax on motor fuel sold within eight hundred feet (800') of the Arkansas terminal of that bridge prior to its abandonment, redesign, relocation, or other change shall continue to be fixed on the same basis as if no such abandonment, redesign, relocation, or other change of the Arkansas terminal of the bridge had been made or taken place.
 (c) Any distributor or dealer of motor fuel who shall sell and deliver any motor fuel within any border rate tax area, except as provided in subsection (a) of this section, shall be guilty of a misdemeanor and upon conviction shall be fined in any sum of not less than fifty dollars ($50.00) nor more than five hundred dollars ($500) or be imprisoned in the county jail for not to exceed thirty (30) days, or be both so fined and imprisoned.
 (d) This section shall apply to abandonments, redesign, relocation, and other changes of bridges made both before and after the passage of this section.
In essence, this statute affords the owner of a service station located within the specified distance of a state line a tax break if one is necessary to roughly equalize the tax burden on the station owner and his competitors in the adjoining state. The legislative intent underlying this statute is clearly to encourage the station owner to keep his business located in Arkansas. See also A.C.A. §§ 26-52-601 through — 607 (authorizing citizens of border towns to substitute 1% sales tax for income tax in order to discourage emigration to adjoining state with lower tax burden).
In Bolinger v. Watson, 187 Ark. 1044, 63 S.W.2d 642 (1933), the Arkansas Supreme Court addressed various constitutional challenges to predecessor legislation, Act No. 63 of 1931, providing that the tax rate on motor fuels sold in cities adjoining the state line would be the lesser of the standard Arkansas rate or the rate in the adjoining state. Without elaborately reproducing the court's analysis, I will simply note that the court refused to adjudge the challenged legislation violative of Ark. Const. amend. 14 (prohibiting "local" and "special" legislation), U.S. Const. amend. 5 and Ark. Const. art. 2, § 8 (both providing that no one shall be deprived of life, liberty or property without due process of law), Ark. Const. art. 2, § 18 (prohibiting the legislature from granting any "citizen or class of citizens privileges or immunities which upon the same terms shall not equally belong to all citizens"), and U.S. Const. amend. 14 (providing that "no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.") 187 Ark. at 1053-54.
The court's analysis with respect to each of the overlapping constitutional challenges is aptly summarized in the following:
 It is no discrimination where the burdens of legislation rest unequally, where the subjects are of different classes, provided the classification rests on substantial difference, and, where the statute is founded upon a reasonable basis, it is sufficient if it operates uniformly upon the class to which it applies. Willis v. Ft. Smith, 121 Ark. 606, 182 S.W. 275.
 The legislation here involved affects equally all of those residing in the border towns according to the tax prescribed by the State upon which they border. These constitute one class, and the act operates uniformly in all other sections of the State, and this constitutes another and different class.
 It is argued that the act deprives the appellants of substantial property rights; that they had established their places of business without the limits of the border towns and within adjacent territory, and the practical working of the law prevented them from selling motor fuel as they must sell it with a six-cent per gallon tax while the motorists, by driving a few miles more, could purchase it at a lower rate. The answer to this is that they could do this without the provisions of [the challenged legislation] for they would only have to drive across the State line into the adjoining State, and therefore there would be no practical difference in their condition with or without the law.
Id. The court has elsewhere characterized the differential rate on motor fuel tax afforded border-town dealers as a matter of legislative favor, not of right, and as such subject to legislative conditions. Hardin v.Croom, 203 Ark. 519, 521, 157 S.W.2d 520 (1942) (upholding legislation declaring that the preferential tax rate would apply only to gasoline pumped into the tank of a customer's vehicle).
Given the court's ruling in Bolinger, I strongly suspect a court would conclude that the legislation at issue is constitutional in all respects. However, I am neither equipped nor authorized to determine whether the tax is actually administered in accordance with the statute within your district.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh