KNOWLTON v. WALTON.

4-3712

Opinion delivered November 5, 1934.

*Ed I. McKinley, Jr.,* and *J. H. Carmichael,* for appellant.

*W. G. Riddick, Floyd Terral, Louis Tarlowski* and *E. G. Shoffner,* for appellee.

HUMPHREYS, J.   This is a proceeding by mandamus brought in the Second Division of the circuit court of Pulaski County to compel the mayor of Little Rock to call a special election on a petition, and an amendment thereto filed on August 29, 30, 1934, seeking to change the form of government of said city under the provisions of act 311 of the Acts of the Legislature for the year 1931.

A response was filed to the petition, and an intervention was filed by a taxpayer attacking the constitutionality of said act.   A demurrer to the intervention was filed.

The trial court heard the case upon the pleadings and agreed statement of facts, resulting in a dismissal of the intervention and a granting of the petition for mandamus.

Both the respondent and intervener have duly prosecuted an appeal to this court.   The agreed statement of facts appears in appellant's abstract as follows:

"It is agreed that petitioner herein is a taxpayer of the city of Little Rock.

"That respondent is mayor of the city of Little Rock.

"That on August 29, 1934, a petition signed by 107 qualified electors of the city of Little Rock, Arkansas, was presented to respondent under the provisions of act 311 of the Acts of Arkansas for the year 1931, requesting and asking him to call an election at which the electors of the city of Little Rock should be permitted to vote upon the question of changing their form of government to the so-called city manager-commission form, and upon the question of naming seven qualified electors proposed in said petition as a charter committee whose duty it would be, among other things, to draft a new charter and system of laws for said city in case the said city manager-commission form of government should be adopted, and said charter committeemen should be elected at said election, upon a ballot containing two lines, 'FOR HOME RULE' and 'AGAINST HOME RULE,'

and naming the said seven proposed charter committeemen to be voted upon.

"That on the next day, August 30, 1934, an additional and supplemental petition was presented to said respondent in the same language and proposing the same seven charter committeemen, before any action had been taken by said respondent upon the petition first presented, and before any similar petition had been presented to him, signed by 144 qualified electors of the city of Little Rock, or a total of 242 such signatures upon the whole petition.

"That at the time said petition was filed the law required the signatures of only 70 qualified electors.

"That said respondent has failed and refused to call an election responsive to said petition, and to issue a proclamation setting the date thereof as required by law; that the persons proposed in said petition for an election mentioned as a proposed charter committee are qualified electors and landowners within the city of Little Rock, and that an exact copy of said first and supplemental petition mentioned in said petition for mandamus is attached hereto Exhibit A.

"It is also agreed that subsequent to the filing of the petition on August 29, 30 the respondent publicly called, at·the request of interested citizens, a mass meeting for the purpose of causing the circulation of another petition under act 311 of 1931, containing different names of proposed charter committeemen; that between the call for said mass meeting and September 4, 1934, respondent was active in securing the assent of persons to be placed upon said new petition as proposed charter members; that said meeting was held in the city of Little Rock on the evening of September 4, 1934, at which it was voted by parties attending to circulate such other petition, and seven qualified persons, some of whom had assented at the request of respondent to the placing of their names on such petition and ballot as proposed charter committeemen, were elected as such. The respondent attended said meeting and was active in the same, and aided in accomplishing its object.

"That, as a result of this meeting, a petition was circulated between the 4th and 7th of September, 1934; that it contained the signatures of 108 qualified electors of the city of Little Rock, but that it contained the names of a proposed charter committee different from those proposed in the first petition already on file with the respondent in all but two instances.

"That said petition was filed with respondent on September 7, 1934, and that on the same date the Pulaski Chancery Court, at the complaint of the petitioner herein, issued a temporary injunction, which was served upon respondent the same day, enjoining him from calling an election responsive to said petition or issuing his proclamation fixing the date thereof, and that said action is still pending.

"That the petitioners who signed said last mentioned petition are not the same persons who signed the first petition.

"That a bond for costs of holding an election, if granted, was filed with the last-mentioned petition and certificate of genuineness of signatures accompanied said last-mentioned petition.

"That an extra copy of said last-mentioned petition with signatures omitted is attached hereto marked Exhibit B."

The constitutionality of the act is assailed by the intervener on the ground that it is a special or local act because it provides for a change of the form of government in cities only that have 50,000 or more inhabitants. Reasonable classifications based upon population in the enactment of laws do not offend against the amendment to the Constitution prohibiting the Legislature from passing special or local laws. If the classification is reasonable and prospective, the law is general, but, if unreasonable and arbitrary, the law is special or local. In the cases of *Childers* v. *DuVall,* 69 Ark. 336, 63 S. W. 802, and *Montgomery* v. *Little,* 69 Ark. 392, 63 S. W. 993, classification based on population in the enactment of valid laws was recognized, and both cases were cited with approval in the recent case of *Blytheville* v. *Ray,* 175 Ark. 1089, 1 S. W. (2d) 548, the latter case having been

decided more than a year subsequent to the passage of Amendment No. 14. We find nothing in this record indicating that the classification contained in act 311 is unreasonable or arbitrary. The Legislature may have ascertained that the commission form of government was not workable or practicable in cities of less than 50,000 inhabitants. In classifications as a basis for the enactment of laws, the Legislature must be allowed a wide latitude of discretion and judgment. *Bollinger* v. *Watson,* 187 Ark. 1044, 63 S. W. (2d) 642.

We find nothing in the Initiative and Referendum Amendment to the Constitution limiting the power of the Legislature to pass an act authorizing a city to change its form of government at a special election to be called by its mayor on petition of a certain number of voters therein.

Said act 311 of 1931, being a general and valid law, is wholly independent of the provisions of the Initiative and Referendum Amendment to the Constitution, and is not and cannot be aided by it, for said act is complete within itself. Act 311 of 1931 sets out its own procedure for putting it into operation, which is entirely different from the procedure provided in the Initiative and Referendum Amendment.

Respondent also contends for a reversal of the judgment because it was within the alleged discretion of the mayor to call the election upon either of the petitions before him. We cannot agree with respondent. It was his duty to call the election upon the first legal petition filed before him. The petition filed with him on August 29, 30, 1934, complied with said act 311 in all respects, and it was his bounden duty to call the election on said petition, and not on the petition filed before him at a later date. *Lenon* v. *Tunnah,* 174 Ark. 765, 297 S. W. 819.

Respondent contends that the petition filed on August 29, 30, 1934, was fatally defective because not verified and because no bond was filed obligating the petitioners to pay the costs of the special election. Said act 311 makes no such requirements. It does however obligate the petitioners for the expenses incident to the special election, and they must deposit a sufficient sum to

defray the expenses of the special election with the election commissioners prior to the date thereof; also no election can be held for the want of funds.

No error appearing, the judgment is in all things affirmed.

MEHAFFY, J., not participating.