JACKS *v*. STATE.

4668                                          242 S. W. 2d 704

Opinion delivered October 8, 1951.

*J. Fred Jones, George Holmes* and *H. A. Tucker*, for appellant.

*Ike Murry,* Attorney General, and *Francis W. Wilson,* Assistant Attorney General, for appellee.

GEORGE ROSE SMITH, J. Appellant was convicted below of having violated Initiated Act No. 1 of 1950 (Acts of 1951, p. 1013), which made it a misdemeanor for the owners of cattle, horses, mules, hogs, sheep, or goats to allow them to run at large on any public highway in the State. Appellant admits that he permitted his cattle to run at large upon a public highway, but he contends that because the asserted offense occurred within a stock law district his conduct was lawful under Act 120 of 1951, which purported to amend the 1950 initiated act. The trial court held the amending act to be unconstitutional and imposed a fine of $10, from which this appeal is taken. Our decision turns upon the validity of Act 120.

Act No. 1 contained no exception to its broad prohibition against the running at large of the animals we have enumerated. But by Act 120 the General Assembly undertook to limit the operation of the initiated act in two respects. (The State does not question the legislature's power to amend an initiated act, as Amendment 7 to our constitution clearly permits such an amendment by a two-thirds vote of all the members in each house. Act 120 received the required vote.)

First, Act 120 provides that the initiated act shall apply not to all public highways but only to United States highways, hard-surfaced highways, and highways within the corporate limits of any city or town. The State insists that this provision infringes the guaranties of Article 2, § 18, of the Arkansas Constitution; but we find it unnecessary to pass upon this question.

Second, Act 120 exempts from its operation any county or district having a stock law enacted prior to January 1, 1951. The State contends that this exemption marks Act 120 as a local law of the type forbidden by Amendment 14 to the State constitution. We think this issue to be decisive.

The distinction between a general law and a local or special law is so well established in Arkansas that a detailed review of the decisions is unnecessary. General laws often apply uniformly throughout the State, but absolute uniformity is not essential in every instance. Classification is permitted, but the differences in the impact of the statute must be reasonably related to the purpose of the law. *Webb* v. *Adams,* 180 Ark. 713, 23 S. W. 2d 617; *Simpson* v. *Matthews,* 184 Ark. 213, 40 S. W. 2d 991. Thus the legislature may restrict the city manager form of government to the larger cities, as there is less need for the system in small communities. *Knowlton* v. *Walton,* 189 Ark. 901, 75 S. W. 2d 811. But a statute which applies only to counties of a certain population is local if relative population has nothing to do with the subject-matter of the law. *State ex rel. Burrow* v. *Jolly,* 207 Ark. 515, 181 S. W. 2d 479.

Both Act No. 1 and Act 120 are manifestly intended to promote public safety upon the highways. Act No. 1 applied to the entire State, but Act 120 exempts areas having a stock law. The question, then, is whether the exemption is reasonably consistent with the goal of uniform traffic safety throughout the State. If local stock laws accomplish substantially the same purposes as the initiated act the exemption is not unreasonable. But if such local laws fall demonstrably short of accomplishing these purposes, if such local laws do little or nothing toward safeguarding highway traffic, then the exemption is arbitrary and makes the statute a local one. It is immaterial whether the inadequate stock laws are few or many in number, for we have repeatedly held that a statute is local when only a single county or other small area is arbitrarily excluded from its purview.

Our statutes contain a wide variety of stock laws. Under general law the electors of three or more townships may restrain the running at large of horses, mules, asses, cattle, goats, swine, sheep, "or any two or more of said animals." Ark. Stats. 1947, §§ 78-1401 to 78-1412. Under another statute counties may prevent the running at large of hogs, sheep, and goats. Section 78-1413 *et*

*seq.* A great many stock laws have been adopted under these acts, and it is evident that in some districts there is no restraint upon large animals, such as horses, mules, and cattle.

Apart from districts created under general law, well over a hundred stock law districts were created by special acts before the adoption of Amendment 14. In many of these districts the prohibition is against straying livestock of any kind, and we may suppose that such laws achieve about the same result as Act No. 1, although in some cases there is no criminal penalty for a violation of the law.

In other districts, however, the ambit of the stock law is narrowly limited. Some of these laws are intended to protect crops and apply only to such small animals as hogs, sheep, goats, etc. Examples in this category include Act 128 of 1901, Act 35 of 1909, Act 329 of 1911, Act 411 of 1917, and Act 447 of 1921. Other laws are intended to prevent hybrid animals from mingling with purebred stock and are directed against straying bulls or boars alone, with an exception which allows registered blooded animals to roam freely. Examples in this category include Act 270 of 1913, Act 144 of 1915, Act 335 of 1919, and Act 422 of 1923. The statutes we have cited apply to fifteen entire counties in all, and many similar laws are on the books.

These examples demonstrate that many county and district stock laws do not restrain all the animals listed in Act No. 1, or even the larger ones that constitute the most serious hazards to motor traffic. It follows that the substitution of local stock laws for the provisions of Act No. 1 is not reasonably calculated to promote traffic safety in every part of the State. Under Act 120 one owner of cattle may be criminally liable for allowing them to wander upon the public roads, while his neighbor may pursue the same course with impunity, merely because he lives within the boundaries of a stock law district wherein restraints are imposed upon hogs, sheep, and goats. Yet the second man's cattle are equally as

dangerous to traffic as are those owned by the first man. Widespread inequalities like this one show that the classification contained in Act 120 bears no fair relationship to the purpose of the statute. The exemption of stock law districts must therefore be condemned as local and arbitrary.

Inasmuch as § 2 of Act 120 is invalid, the Act fails in its entirety. In this respect the case is similar to *Webb* v. *Adams, supra.* There an otherwise general law contained a proviso by which two of the seventy-five counties were arbitrarily excluded from the scope of the statute. We were urged to abrogate the proviso alone, thus converting the law into one of state-wide application. But Judge HART pointed out that such a construction would make the law apply to the two counties explicitly excluded by the legislature and thus would amount to judicial legislation. The present case is even stronger, as the sole purpose of Act 120 was to limit the effective scope of Act No. 1, and we have no reason to think that the legislature would have adopted Act 120 had stock law districts not been exempted. The circuit court was therefore correct in declaring Act 120 to be wholly unconstitutional.

Affirmed.

ROBINSON, J., dissents.

ROBINSON, J., dissenting. Initiated Act No. 1, approved at the general election, November 7, 1950, makes it unlawful for owners of cattle, horses, mules, hogs, sheep or goats to allow them to run at large along or on any public highway in the State of Arkansas. Act No. 120, 1951, amends Act No. 1 to the extent of prohibiting the running at large of the stock mentioned only on U. S. highways or paved highways, and provides that the Act does not apply to "any county or stock law district which had enacted a county or district stock law prior to January 1, 1951." Because Act 120 excludes from its operation any county or stock law district which already prohibited the running at large of the stock with which the Act was deal-

ing, this Court held that Act 120 is local or special legislation and, therefore, unconstitutional.

Under the general laws of the State, three or more townships, by a vote of not less than 25% of the qualified electors of said district, can petition the County Court to call an election for the purpose of prohibiting the running at large of livestock in the designated district. Many such districts have been formed in the State. Even if Act 120 had not exempted those districts which had voted a stock law and the Court should hold that the Act applied to those districts, there is nothing to prevent the County Court, on petition of a sufficient number of qualified electors from calling an election for the purpose of again adopting a stock law. Hence, it would be a futile thing to apply an act of the legislature to a local stock law district voted by the people when the voters' power to re-enact a stock law was left intact.

In my opinion, Act 120 would not have affected stock law districts mentioned therein even if the exemption had not been specifically set out. ''Where there is a special Act made to apply in particular cases, it only applies, and not the general act.'' *Mills* v. *Sanderson,* 68 Ark. 130, 56 S. W. 779. Therefore, the exemption was a nullity. It did nothing, and cannot be construed as making Act 120 special or local legislation. For this reason, I respectfully dissent.