MANKIN *v.* DEAN.

5-1464                                                310 S. W. 2d 477

Opinion delivered February 24, 1958.

[Rehearing denied March 24, 1958]

*Pettus A. Kincannon, City Atty.,* for appellant.

*McMath, Leatherman & Woods* and *Dobbs, Pryor & Dobbs,* for appellee.

GEORGE ROSE SMITH, J. This is an action brought by the appellees, members of the Fort Smith fire department, for a writ of mandamus to compel the city commissioners to comply with Act 157 of 1957. The decisive question is whether the statute violates the constitutional prohibition against local legislation. Ark. Const., Amendment 14. The trial court held the act to be valid and issued the writ.

Before the passage of the act in question it was provided by general law that fire department employees in cities of the first class should not be required to work more than seventy-two hours a week, except in emergencies. Ark. Stats. 1947, § 19-2104. Act 157 added a proviso directing that in cities or towns having a commission form of government with a full paid fire department, no member of the department should be required to be on duty more than fifty-six hours a week, nor should there be a reduction in pay on account of the shorter work week. It is stipulated that the parties are not aware of any city except Fort Smith that is affected by Act 157.

It is settled by many decisions of this court that the Constitution permits the General Assembly to resort to classification if the varying treatment accorded to the different classes bears a reasonable relation to the purpose of the statute. We summarized the matter in *Jacks* v. *State,* 219 Ark. 392, 242 S. W. 2d 704: ''General laws often apply uniformly throughout the State, but absolute uniformity is not essential in every instance. Classification is permitted, but the differences in the impact of the statute must be reasonably related to the purpose of the law. *Webb* v. *Adams,* 180 Ark. 713, 23 S. W. 2d 617; *Simpson* v. *Matthews,* 184 Ark. 213, 40 S. W. 2d 991. Thus the legislature may restrict the city manager form of government to the larger cities, as there is less need for the system in small communities. *Knowlton* v. *Walton,* 189 Ark. 901, 75 S. W. 2d 811. But a statute which applies only to counties of a certain population is local if relative population has nothing to do with the subject-matter of the law. *State ex rel. Burrow* v. *Jolly,* 207 Ark. 515, 181 S. W. 2d 479.''

Here the question is whether the form of city government is a factor to be fairly and logically considered in fixing the working hours of the fire department. The appellees rely confidently on the holding in *McLaughlin* v. *Ford,* 168 Ark. 1108, 273 S. W. 707, but it is quite plain that that case, apart from the fact that it was decided before the adoption of Amendment 14, is not controlling here. There the legislature had originally fixed the salaries of the board of commissioners in cities of the first class having that type of government. By the amendment attacked in the *McLaughlin* case the legislature increased the salaries of the commissioners in cities having a population of 25,000 or more. We held the act to be valid, even though it applied only to Fort Smith, because it was so worded as to permit other cities to come within its purview in the future. We adhere to that view and do not intimate that Act 157 of 1957 is a local law merely because Fort Smith is the only city now affected by it.

In the *McLaughlin* case, however, the classification was in other respects so clearly reasonable that we did not find it necessary even to discuss the point. The act, it is true, applied only to cities having a commission government, but that was unavoidable, as the sole purpose of the act was to fix the salary of the commissioners. Nor was it unreasonable to provide higher salaries in cities having more than 25,000 inhabitants, for the duties of the commissioners are undoubtedly more extensive in the larger cities than in the smaller ones.

After careful study we are unable to find any substantial connection between the work week of firemen and the form of municipal government. Doubtless many considerations, such as the health of the workman and the occupational hazards to which he is subject, must be taken into account in arriving at the maximum hours of duty for a fireman. But we are at a loss to see why the determination should be controlled solely by the form of city government. It is not suggested that the firemen's duties or working conditions in a city having a board of commissioners are in any way dissimilar to those in a city having a mayor and city council or a city manager. There being no reasonable relation between the classification and the purpose of the law, the distinction must be deemed to be arbitrary and to violate the prohibition against local legislation.

We are urged to hold that the General Assembly should be permitted to experiment with new legislation in a narrow field before making it applicable to the state as a whole. However desirable we might think that course to be, Amendment 14 contains no exception to its positive command: "The General Assembly shall not pass any local or special act." If this theory of experimentation were accepted it is hard to see what would be left of the constitutional provision, for every local measure could be justified on the ground that it was being preliminarily tested in a restricted area.

Reversed and dismissed.

McFADDIN, J., dissents.

Ed. F. McFaddin, Associate Justice, dissenting. The learned Circuit Judge wrote a splendid opinion in deciding this case as he .did; and I think the majority should have affirmed his judgment. I copy portions of Judge Paul Wolfe's said opinion:

----

In the opinion of the court all of these objections were met in the case of *Nalley* v. *Throckmorton,* 212 Ark. 525, 206 S. W. 2d 455. In that case the plaintiffs were members of the Little Rock Fire Department and they sought to force the City of Little Rock to put into effect the 72 hour week provided for by Act No. 240 of 1947. . . . The City of Little Rock raised the same objections there to avoid the 72 hour week as are raised now by the City of Fort Smith in seeking to avoid the 56 hour work week. The Supreme Court of Arkansas upheld the law creating the 72 hour standard and stated:

"The fact that enforcement of a law of general application to all classified cities may, as a practical proposition, compel the appointment of additional firemen does not render the legislative mandate void for want of due process, or for any other reason."

Furthermore, in the *City of Stuttgart* v. *Elms, Admr.,* 220 Ark. 722, 249 S. W. 2d 829, the Legislature had raised the salary of the Municipal Judge of the City of Stuttgart; and the City voiced the same objections as are now raised by the City of Fort Smith. The Supreme Court again said that the argument of the City was without merit. . . .

The objection that Act 157 constitutes void local legislation would pose a formidable legal question but for the reliance this Court places upon the decision in *McLaughlin* v. *Ford,* 168 Ark. 1108, 273 S. W. 707. This case was decided in 1925 prior to the adoption of Constitutional Amendment 14, but the considerations involved are identical with the prohibition raised by Amendment 14 for the reason that if the Act under review in *McLaughlin* v. *Ford* was local it would be unconstitutional as the then mandatory 30 day notice period of an intent to apply for a local bill had not been given as required by Article 5, Section 25

of the Constitution. Furthermore, *McLaughlin* v. *Ford* is actually one of the recognized landmark cases on the subject of general versus special legislation and has been cited many times in cases arising under Amendment 14. See *LeMaire* v. *Henderson*, 174 Ark. 936, 298 S. W. 327 (1927) ; *Blytheville* v. *Ray*, 175 Ark. 1089, 1 S. W. 2d 548 (1928); *Webb* v. *Adams*, 180 Ark. 713, 23 S. W. 2d 617 (1929); *Cannon* v. *May*, 183 Ark. 107, 35 S. W. 2d 70 (1931) ; *Board of Commissioners* v. *Wood*, 183 Ark. 1082, 40 S. W. 2d 435 (1931) ; *Street Imp. Dist.* v. *Hadfield*, 184 Ark. 598, 43 S. W. 2d 62 (1931) ; *Conway County* v. *Williams*, 189 Ark. 929, 75 S. W. 2d 814 (1934) ; *Paige, Treas.* v. *Rodgers*, 199 Ark. 307, 134 S. W. 2d 573 (1939) ; and *Murphy* v. *Cook*, 202 Ark. 1069, 155 S. W. 2d 330 (1941).

In *McLaughlin* v. *Ford* a taxpayer sought to void an Act of the 1923 Special Session of the Legislature on the ground that it applied only to the City of Fort Smith, and therefore was local in character. The act questioned raised the salary of certain Fort Smith officials and was passed as a direct amendment to Section 12 (the salary provision) of Act 13 of 1913. Act 13 authorized the commission form of municipal government for Arkansas cities and provided that upon adoption by the city concerned that the officials thereof should be paid certain salaries. The Amendment to Section 12 provided that cities having a population of 25,000 or more should pay their officials certain salaries, thus giving these officials a raise in pay. In the suit which followed it was acknowledged that the City of Fort Smith was the only municipality in the state affected, for while there were other cities in the state having a population of 25,000, Fort Smith was the only one of this category which also had a commission form of government. One of the two ultimate issues to be decided then, as in the case at bar, was whether legislation directed only to cities having a commission form of government constituted local legislation where only one city was affected. The decision was that such circumstances did not invalidate the legislation. In so holding the Court said:

"To make a law general it is not necessary that it should operate upon all cities and towns in the State; but that it is sufficient if it applies to all towns and cities

coming within the designated class . . . to say that a general law cannot be passed to govern and regulate cities having a certain designated population or more, because only one city of that class exists, is to hold that no law can be passed to provide for future wants or necessities, . . . It may be, as contended by counsel for the plaintiffs, that Fort Smith is the only city in the State which falls within the provisions of the original act and the amendatory act; but when the provisions of both acts are considered, it will be readily seen that other cities may come within the provisions of the act in the future.''

The Court thus stated the ''prospective in operation'' test, as later applied to *LeMaire* v. *Henderson,* 174 Ark. 936, 298 S. W. 327, and other cases. Similar issues have arisen in other states. In a case notably like this one (*Baumhauer, et al.* v. *State ex rel. Smith,* 240 Ala. 10, 198 So. 272 (1940) decided by the Supreme Court of Alabama), the legislature had passed an act granting salary increases to firemen and policemen in incorporated cities governed by a commission form of government created under a 1911 act. It was charged that the act was special legislation and applied only to the City of Mobile, Alabama, which was the only city having a commission form of government. The Court dismissed the charge of special legislation and upheld the act, saying:

''The Act of March 4, 1937, does not attempt to classify cities as to population, but is a general act applicable to all cities that may elect to adopt the commission form of government under the Act of 1911. . . .''

In a recent Texas case (*Smith* v. *City of Austin,* [Tex. Civ. App.] 212 S. W. 2d 947 [1948]), a taxpayer urged that certain collection laws under city government were invalid because they were provided for by special law. The law in question applied to ''Home Rule'' cities only. The Texas Court said:

''The legislature may classify similar subjects for legislative purposes so long as the classification is reasonable and not arbitrary. Legislative classification of cities or towns according to the mode of incorporation, i.e., by

special law, general law, and by adopting Home Rule charters, has been long recognized and upheld.''

Similarly, in the case at bar, the Arkansas Legislature chose to classify cities according to their mode of incorporation and any city incorporating as a commission form of government is covered by Act 157. In *Devlin* v. *Cooper,* 125 N. J. L. 414, 15 A. 2d 630, 1940, the act in question made different provisions for certain officers of municipalities, depending upon whether the municipality had accepted or adopted certain state provisions relating to civil service. The effect of the act was that one result would come about in tenure in office if civil service regulations had been voluntarily accepted by the city and another result if not. It was argued that the discrimination made the act special legislation. Said the Court:

''But the statute in question does not evidence the speciousness in generalization that is the deciding factor in the determination of unconstitutionality in issues of this character. It is well established that statutes may be operative and limited to specified types of municipalities. . . . The Legislature is given considerable discretion in this respect. There is undoubted legislative power to classify and differentiate among municipalities through the voluntary acceptance of the privileges and limitations of the Civil Service Act by some, while others choose to stay outside the act. . . . That is a right open to all municipalities if they wish to exercise it, so that it is general, not special. . . . The power to make classifications is original with and equivalent with the power to confer attributes on the classifications.''

The case at bar is an excellent example in concrete form of the language just quoted. Other cities in Arkansas have the right open to them to become commission cities, just as the legislature has the power to confer attributes on the various classes of Arkansas cities which it has created. . . .

It may also be said that Act 157 should have been passed as an amendment to Act 13 of 1913. Certainly it would not have been construed as a local exemption to that Act under the holding in *McLaughlin* v. *Ford, supra,* but

in any event it does not appear proper for the judiciary to sit in judgment upon the paths the legislative branch elects to follow within its own chambers; at least we should not do so in the absence of a clear violation or manifest abuse of the legislative process. In this connection our Supreme Court has said that in classifications as a basis for the enactment of laws, the Legislature must be allowed a wide latitude of discretion and judgment. *Knowlton* v. *Walton*, 189 Ark. 901, 75 S. W. 2d 811; *Bollinger* v. *Watson*, 187 Ark. 1044, 63 S. W. 2d 642.

There are, of course, many cases on the subject of local acts, but a review of them fails to dislodge the validity of the analysis of Justice Hart in the McLaughlin case and the supporting cases cited from other jurisdictions. This is not "one mile from the court house" legislation as in *Conway Co. Bridge District* v. *Williams*, 189 Ark. 929, 75 S. W. 2d 814, nor is it apart from the long sanctioned type of legislation which has been frequently utilized by the Legislature and approved by the courts. In this connection it should be noted that since the passing of the 1913 Act authorizing a commission form of Government that the practice of drafting legislation so as to pertain only to cities having a commission form of government has been an unchallenged legislative practice. There are many acts pertaining to the City of Fort Smith that would be jeopardized with far reaching consequences by overturning what has thus been long accepted as a lawful approach. In the absence of cogent reasons which are lacking here surely such a long established custom should not be ignored and abruptly condemned without any form of caveat.

As a matter of course throughout the consideration of the questions presented herein the Court has borne in mind the presumption that the Legislature properly exercised its authority, and where it is doubtful whether the Act violated the Constitution, the doubt must be resolved in favor of the constitutionality of the Act. *Board of Commissioners of Red River Bridge District* v. *Wood*, 183 Ark. 1082, 40 S. W. 2d 435; *Busbee* v. *Hutton*, 186 Ark. 134, 52 S. W. 2d 647; *Bollinger* v. *Watson*, 187 Ark. 1044, 63 S. W. 2d 642.

Lastly, the Court would like to point out that while it is sympathetic with the problems of both the firemen and the City Commission, that the question of whether the firemen should or should not be given a raise or whether the city has or has not the money to pay an increase is not for this Court to decide in passing on this case. Our law is plain that the Legislature has supreme authority in this field when it elects to act, and as judge I am bound by the law. It follows that the only questions open for this court to pass upon in this case have to do with legal technicalities. In announcing this decision, I feel obligated to state that I do not feel that the law should be as it is, for it tends to deprive the people of the city of the right to manage their own household. In my private judgment the pay of city employees and the city's financial affairs are both purely local matters which the taxpayers of the city should be allowed to pass on without outside directions. But this is not the law of the land, and I am bound by a higher principle which is universally recognized as sound, the principle that judges of courts are not to consider the wisdom of legislation nor let their private judgment interfere when passing upon the constitutionality of legislation.

I cannot improve on Judge Paul Wolfe's opinion; so I adopt it as my dissent.