WHITTAKER v. CARTER.

5-3580 386 S. W. 2d 498

Opinion delivered February 8, 1965.

*Sam Sexton,* for appellant.

*Edward E. Bedwell* and *Woodrow Durden,* for appellee.

FRANK HOLT, Associate Justice. The appellant brings this as a class suit against the appellees, the election and city officials of Fort Smith, Arkansas, to enjoin and restrain the appellees from holding a city election pursuant to the provisions of Act 3 of the 1965 General Assembly and, also, to test the validity of this recent enactment. This Act purports to change the date of municipal general elections in all cities having a Commission form of gov-

ernment. A copy of the Act is made an appendix to this opinion. The case was submitted to the chancellor upon appellant's verified petition and his testimony. The chancellor denied the temporary injunction on January 27, 1965 and held that the questioned Act "is general in its nature and is a valid Act and not in violation of Amendment Fourteen to the Constitution of the State of Arkansas". From that decree appellant brings this appeal.

Appellant first contends that "Act 3 is an attempt to amend a local or special Act and as such is in conflict with Amendment Fourteen to the Constitution of Arkansas and is for this reason void." We agree with the chancellor that Act 3 is valid legislation.

Before 1949 the election of city officials in cities of first and second class was held on the first Tuesday in April. Ark. Stat. Ann. § 19-902 (Repl. 1956). In 1949 the Legislature, by Act 307 [Ark. Stat. Ann. § 19-902.1], provided that the election of municipal officials in all cities and incorporated towns should henceforth be conducted on Tuesday following the first Monday in November. However, Section 3 of that Act [Ark. Stat. Ann. § 19-902.3] provided that any city having a Commission form of government was excepted from the Act. Therefore, the general election date for such city officials continued to be on the first Tuesday in April. Now, by Act 3 of 1965, the Legislature has changed the general election date for a city having a Commission form of government from the first Tuesday in April to the fourth Tuesday in February and has provided that the city officials so elected at such election shall take office on Monday following the first Tuesday in April. The Act also provides that a primary election shall be held two weeks before the general election.

Local legislation is prohibited by Amendment Fourteen to our State Constitution. In support of his contention that Act 3 is local and special legislation, appellant cites to us such cases as *Webb* v. *Adams,* 180 Ark. 713, 23 S. W. 2d 617; *Benton* v. *Thompson,* 187 Ark. 208, 58

S. W. 2d 924; *Mankin* v. *Dean*, 228 Ark. 752, 310 S. W. 2d 477; and *Laman* v. *Harrill*, 233 Ark. 967, 349 S. W. 2d 814. We do not consider these cases applicable to the case at bar. It is well known that laws are general and not local or special when they apply uniformly throughout the State and, further, that our Constitution permits the Legislature to resort to classification where the differences in the effect of the statute are reasonably related to the purpose of the law. *Jacks* v. *State*, 219 Ark. 392, 242 S. W. 2d 704; *McLaughlin* v. *Ford*, 168 Ark. 1108, 273 S. W. 707. We have approved legislation classifying the cities which are subject to the City Manager form of government on the basis that the Legislature considers there exists a greater need for that type of government in larger cities than in the smaller ones. *Knowlton* v. *Walton*, 189 Ark. 901, 75 S. W. 2d 811.

In the case at bar the 1949 and 1965 Acts deal with the same subject: election dates in cities having a Commission form of government. Both Acts apply with equal impact upon all cities and towns having that form of government. It is true that now it applies only to the cities of Fort Smith and Eureka Springs since they are the only two cities having that type of government. However, it is prospective in nature since it includes any other city in the future that comes within the classification. We have recognized the validity of legislation by classification where it is prospective and reasonable. *McLaughlin* v. *Ford, supra; Murphy* v. *Cook*, 202 Ark. 1069, 155 S. W. 2d 330. There is a presumption of validity attending every legislative enactment. We perceive no reason why the Legislature does not have the authority to deem it necessary to select an election date for all cities having a Commission form of government that is different from the election date in those cities having other types of city government. We find no constitutional impediment to either of the questioned Acts.

Act 3 of 1965 expressly states that the change in election dates from April to February was necessary to avoid the confusion resulting from the adoption of the Voter Registration Amendment [now Amendment 51]

known as the "Arkansas Amendment For Voter Registration Without Poll Tax Payment", inasmuch as "the voters in such municipalities will not be allowed sufficient time to register prior to the present [April] date". Thus, appellant next contends that "Act 3 is an attempt by the Legislature to evade the clear mandate of the voter registration amendment and is for that reason void." Appellant argues that the purpose and effect of Act 3 "is that all persons who do not possess a poll tax receipt, even though otherwise qualified within the contemplation of the Voter Registration Amendment, will be denied the right to vote and participate in this election". In other words, appellant insists that Act 3 results in conferring upon those citizens [of the affected municipalities] who now possess a valid poll tax receipt the right to participate in the election of their municipal officials to the exclusion of those who do not now possess such a poll tax receipt since the latter would be qualified and eligible voters under provisions of Amendment 51 if the election were held after March 1, 1965. The complete answer to this argument, of course, is found in § 21 of Amendment 51 which reads:

"EFFECTIVE DATE. This Amendment shall be in full force and effect from and after January 1, 1965; provided, that for any elections held before March 1, 1965, those voters who are registered electors as of December 31, 1964, shall be permitted to vote in such election if otherwise qualified."

It is obvious that the framers of this Amendment anticipated the very problem presented in the case at bar. Therefore, instead of Act 3 being an attempt by the Legislature to evade the provisions of the Voter Registration Amendment, No. 51, we think the Act is clearly compatible with the manifest purpose and intent of the Amendment.

Affirmed.

## ACT 3 OF 1965

AN ACT to Establish the Date for Holding General Elections in Cities Having a Commission Form of Government; to Establish the Date on Which Officials Elected at Such General Elections Shall Take Office; and for Other Purposes.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. All general elections for officers of municipalities in this State having a Commission form of government under Act 13 of 1939 (Ark. Stats. (1947) 19-601 et seq.), as amended, shall hereafter be held on the fourth (4th) Tuesday in February of the year in which such an election is to be held, and the primary election in such municipalities shall be held two (2) weeks prior to the date of the general election as now provided by law.

SECTION 2. Officers elected at such general elections under this Act shall take office on the Monday following the first Tuesday in April following such general election.

SECTION 3. It is hereby found and determined by the General Assembly that the present law governing the time of elections in municipalities have a Commission form of government is in a state of confusion since the adoption of the Voter Registration Amendment to the Constitution of the State of Arkansas; that under such Amendment the voters in such municipalities will not be allowed adequate time to register prior to the present date established for holding municipal elections in such cities; that this Act is immediately necessary to ensure each voter in such municipalities his franchise; therefore an emergency is declared to exist and this Act being necessary for the preservation of the public peace, health and safety shall be in full force and effect from and after its passage and approval.