David P. HENRY *v.*
PULASKI COUNTY ELECTION COMMISSION
City of Little Rock, *Intervenor*

94-1310                                    891 S.W.2d 61

Supreme Court of Arkansas
Opinion delivered January 30, 1995

*Henry Law Firm, P.A.*, by: *David P. Henry*, for appellant.

*Thomas M. Carpenter* and *William C. Mann, III*, for appellee.

TOM GLAZE, Justice. Appellant David P. Henry was a candidate for Little Rock Municipal Court in the November 8, 1994 General Election. He had two opponents, David Stewart and Dana Reece. Stewart won the election by a plurality, receiving forty-three percent of the votes. Henry and Reece garnered respectively thirty-five and twenty-two percent of the votes cast. On November 14, 1994, Henry filed suit against the Pulaski County Election Commission in circuit court, requesting a runoff election be held because no candidate received a majority of the votes. The City of Little Rock was permitted to intervene and, subsequently, its motion to dismiss Henry's suit was granted.[1]

---

[1] Because Henry's claim included a constitutional challenge to Arkansas statutes, the trial court determined the Attorney General had been properly notified of the challenge and had declined to make an appearance.

Henry's argument, at trial and now on appeal, challenges certain Arkansas statutes as being special or local legislation and violative of Ark. Const. amend. 14. Those statutes, in relevant part, provide that municipal officers, including judges, of municipalities having the city manager form of government shall be elected to the office sought without obtaining a majority of the votes cast or requiring a runoff election. *See* Ark. Code Ann. §§ 16-17-208 (Repl. 1994), 14-47-109(c) and -110(a)(4) (Cum. Supp. 1993), and 7-5-106 (Repl. 1993). In particular, Henry points to § 7-5-106 where paragraph (a) of that statute, among other things, provides that, where no candidate for any municipal office receives a majority of the votes cast at the general election, a runoff election shall be held two weeks later. However, paragraph (b) of § 7-5-106, in pertinent part, provides "the term 'municipal officers' [used in paragraph (a)] shall not include officers of cities having a city manager form of government" and "[§ 7-5-106] shall not be applicable to election of members of the board of directors and other officials of cities having a city manager form of government." It is this exception contained in paragraph (b) that Henry argues is violative of Ark. Const. amend. 14.

The case of *Whittaker* v. *Carter,* 238 Ark. 1074, 386 S.W.2d 498 (1965), is helpful in resolving the issue before us. There, Whittaker sought to enjoin Ft. Smith officials from holding a city election under Act 3 of 1965. That Act purported to change the date of municipal general elections in all cities having a commission form of government. Although municipal officials in all other cities and incorporated towns were required to conduct their elections on the date of the November general election pursuant to Act 307 of 1949, the General Assembly in 1965 enacted Act 3, which changed the date of election in cities having the commission form of government to the fourth Tuesday in February.[2] Whittaker argued that Act 3 was local and special legislation, and municipalities with the commission form of government should hold elections in November like other cities and towns. This court disagreed.

---

[2]Cities with the commission form of government also had been excepted under Act 307 so as to authorize them to hold elections in April when other municipalities were required to hold elections in November. Act 3 merely changed the election date for city commission governments from April to February. Because Act 3 was the legislation in effect when the Whittaker suit was commenced, we refer to it in our discussion, since Act 3 was the law under attack.

The *Whittaker* court recognized the validity of legislation by classification and, by example, pointed out that, in *Knowlton* v. *Walton*, 189 Ark. 901, 75 S.W.2d 811 (1934), the court had approved legislation classifying cities subject to the city manager form of government on the basis that the Legislature considers there exists a greater need for that type of government in larger cities than in the smaller ones. The court further recognized that Ft. Smith was within the commission form of government classification, and Act 3 applied with equal impact upon all cities and towns having that form of government.[3] The court then held as follows:

> There is a presumption of validity attending every legislative enactment. We perceive no reason why the Legislature does not have the authority to deem it necessary to select an election date for all cities having a Commission form of government that is different from the election date in those cities having other types of city government. We find no constitutional impediment to [Act 3].

The principles and rationale in *Whittaker* apply here. Section 7-5-106(b) is a general law which applies with equal impact upon all cities having a city manager form of government. Thus, considering the presumptive validity to be given that statute, we are unaware of any reason why the General Assembly cannot provide a vote requirement for electing a municipal judge in all cities having a city manager form of government different from vote requirements for judges of cities having other types of city government.

In conclusion, we note Henry's mention and reliance on *Knoop* v. *City of Little Rock*, 277 Ark. 17, 638 S.W.2d 670 (1982), where the court held that Act 539 of 1981 was special legislation and contravened Ark. Const. amend. 14. The *Knoop* decision merely illustrates the correctness of our holding here. There, the statutory law generally provided that municipal officers of a city manager form of government were to be elected by a plurality vote. Act 539, however, empowered city manager governments,

---

[3]At the time, Ft. Smith and Eureka Springs were the only cities having the commission form of government, but the court concluded the classifying legislation was valid because it was prospective and reasonable since it included any other city in the future that comes within the classification.

having over 100,000 people, to directly elect their mayor or board of directors by a majority vote and required a runoff election, if necessary. Of eight Arkansas cities having a city manager form of government, only Little Rock was granted this authority under Act 539. Obviously, Act 539 was a special or local law that did not equally impact all cities having a city manager form of government.[4]

For the reasons above, we affirm.

---

[4]The *Knoop* court further stated that, while the General Assembly might draw population classifications that treat cities differently when the purpose of the act is based on a reasonable and sound basis due to substantial differences and needs, it could not find any reasonable basis in the differences provided in Act 539.