The Honorable Bill H. Stovall, III State Representative 2324 Heber Springs Road West Quitman, AR 72131-0426
Dear Representative Stovall:
I am writing in response to your request for my expedited opinion on a question I will paraphrase as follows:
 Is the amnesty (forgiveness) provision contained in House Bill 1030 constitutional?
RESPONSE
Although I appreciate the legislature's eagerness to spare certain Arkansas truck and semitrailer owners from incurring a tax liability they had not anticipated, I must regretfully opine that I consider the proposed legislation constitutionally suspect. As a basis for concluding that no Arkansas use tax liability should attach to vehicles registered through third parties in Oklahoma, the drafters of H.B. 1030 attempt to define the intention of the 1949 legislature in enacting the Uniform Motor Vehicle Administration, Certificate of Title, and Antitheft Act, A.C.A. § 27-14-101 et seq. In my opinion, this effort to resolve a pending dispute by interpreting past legislation amounts to an impermissible effort by the legislature to make a judicial determination, thus violating the principle of separation of powers set forth in Ark. Const. art. 4, §§ 1 and 2. Moreover, irrespective of whether the commercial vehicles were registered through third parties in Oklahoma, if a trier of fact were to determine that H.B. 1030 attempts to forgive what would otherwise be matured Arkansas sales or use tax liability, I believe the court would strike the amnesty provision as special legislation prohibited by Ark. Const. amend. 14 and, possibly, Ark. Const. art. 5, § 25. In my opinion, any legislative effort to forgive matured corporate sales or use tax liability would further constitute an impermissible discharge of debt in violation of Ark. Const. art. 12, § 12. Finally, I should note that only a finder of fact can determine on a case-by-case basis whether an Arkansas use tax liability has attached to commercial equipment. The judiciary constitutes the proper forum in which to make any such determination.
House Bill 1030, as engrossed on January 24, 2003, bears the following title:
 AN ACT TO EXEMPT FROM THE STATE SALES AND USE TAX THE GROSS RECEIPTS IN EXCESS OF ONE THOUSAND DOLLARS ($1,000) DERIVED FROM THE SALE OF A TRUCK TRACTOR AND IN EXCESS OF FIVE HUNDRED DOLLARS ($500) DERIVED FROM THE SALE OF A SEMITRAILER; AND FOR OTHER PURPOSES.
Section 1 of the bill proposes to add to the Code a statute, A.C.A. §26-52-433, extending to "semitrailers" and "truck tractors," as defined, the described limited exemption from sales taxation. Section 2 of the draft legislation proposes to add another statute, A.C.A. § 26-53-141, extending a commensurate limited exemption to semitrailers and truck tractors subject to use taxation.[1]
The impetus for proposing this limited exemption from taxation is described in the bill's emergency clause, which provides in pertinent part:
 It is found and determined by the General Assembly of the State of Arkansas that a recent Oklahoma court decision drastically affected the trucking industry by preventing Arkansas trucking companies, partnerships, and independent operators from using third party registration agents in Oklahoma to register their equipment;[2] that the Arkansas Department of Finance and Administration has indicated its intent to collect gross receipts and compensating use tax on trucking equipment purchased for at least the past three (3) years by Arkansas trucking businesses that use third party registration agents in Oklahoma to register their equipment; the collection of gross receipts or compensating use tax on trucking equipment purchased for the past three (3) years or longer will have a devastating effect on the trucking industry in Arkansas, including forcing trucking businesses out of business, into bankruptcy, or to relocate outside of Arkansas; that the future collection of gross receipts and compensating use tax on the total sale price of trucking equipment registered in Arkansas will have a similar chilling effect on the trucking industry in the State of Arkansas. . . .
In an effort to avoid the dire effects this passage suggests would follow if the Department of Finance and Administration were to succeed in collecting sales and use tax on past trucking equipment purchases, H.B. 1030 contains several provisions you have characterized as offering tax "amnesty" or "forgiveness." The portion of the bill relating to past sales tax liability would include the following in the proposed A.C.A. §26-52-433:
 (e)(1) It is the intent of the Uniform Motor Vehicle Administration, Certificate of Title, and Antitheft Act, § 27-14-101 et seq., that any reciprocal agreements consummated with the authorized officials or representatives of any one or more states of the United States, whereby residents of a state other than Arkansas who operate commercial motor vehicles may allocate and apportion the registration of the commercial motor vehicles in accordance with any formula mutually agreed upon between the commission and the representative or officials of the state if residents of this state are granted the same allocation and apportionment privileges for the registration of commercial motor vehicles in the other state, shall be given effect notwithstanding the fact that the other state may have allowed registration in that state using a third party agent.
 (2) Accordingly, the State of Arkansas shall not assess or collect from any person or legal entity any gross receipts tax, interest, or penalties on the purchase of a new or used truck tractor or semitrailer in this state if the truck tractor or semitrailer was registered or licensed in another state under a reciprocal agreement contemplated by the Uniform Motor Vehicle Administration, Certificate of Title, and Antitheft Act, § 27-14-101 et seq., notwithstanding the fact that the other state may have allowed registration in that state using a third party agent.
Section 2 of the bill proposes enacting as A.C.A. §§ 26-53-141(e)(1) 
(2) an identical provision applicable to use tax liability.
Before addressing the constitutionality of this proposed legislation, I should provide some factual background. The Uniform Motor Vehicle Administration, Certificate of Title, and Antitheft Act (the "Act") contains a provision authorizing "reciprocal agreements" between states regarding the allocation and apportionment of registration fees on commercial vehicles that operate in both states. Specifically, A.C.A. §27-14-502 (Repl. 1994) provides in pertinent part:
 (a) The commission[3] is authorized to negotiate and consummate reciprocal agreements with the duly authorized officials or representatives of any states of the United States, whereby residents of such other states who operate commercial motor vehicles may allocate and apportion the registration of such commercial motor vehicles in accordance with any formula mutually agreed upon between the commission and the representatives or officials of such state if residents of this state are granted the same allocation and apportionment privileges for commercial motor vehicles' registration in such other state.
* * *
 (c)(1) In the making of any reciprocal agreement, the commission shall exercise due regard for the advantage and convenience of resident motor vehicle owners and the citizens of this state.
 (2) No agreement shall be entered into with any state extending privileges and exemptions to motor vehicle operators of such state unless that state accords equal or greater privileges and exemptions to Arkansas motor vehicle operators.
According to my inquiries, during the period at issue, the State of Arkansas' participation in such agreements has been by virtue of its membership in the International Registration Plan, Inc. (the "IRP"), which comprises all 48 contiguous states and 10 Canadian provinces. The Foreword to the International Registration Plan (the "Plan") describes that document as "a registration reciprocity agreement among states of the United States and provinces of Canada providing for payment of license fees on the basis of total distance operated in all jurisdictions."
My review of the Plan suggests that, in accordance with the Foreword's description and the provisions of A.C.A. § 27-14-502, it is concerned exclusively with the allocation among member states and provinces of registration fees collected in the "base jurisdiction" (i.e., the state of registration) pursuant to a formula that reflects the respective mileage traveled by the vehicle in each state. The Plan authorizes "apportioned vehicles" to register in any state in which they have an "established place of business" — a term defined as "a physical structure owned, leased or rented by the fleet registrant." Plan, Article II, § 218(a). Although the IRP reportedly determined that this provision precluded the State of Oklahoma from allowing Arkansas truckers to register their vehicles in Oklahoma through third parties — a decision apparently upheld by an Oklahoma court — I have been provided recent correspondence from the IRP, which is charged with determining compliance under the Plan, to the Arkansas Trucking Association declaring that such registrations filed prior to the date when Oklahoma stopped the practice are valid and will continue to be so until they expire.
Against this backdrop, I am prepared to address the issue of whether the proposed A.C.A. §§ 26-53-433(e) and — 141(e) are subject to constitutional attack. In considering this question, I am initially struck by the fact that these provisions of the bill ascribe to the 1949 legislature an intention (1) to authorize reciprocal agreements whereby third parties might register commercial vehicles in other states; and (2) by implication, to exempt any vehicles thus registered from Arkansas sales or use tax liability.[4] Not being a finder of fact, I am neither equipped nor authorized to opine whether these ascriptions of intent are warranted.[5] However, I am qualified to opine on the constitutional implications of the fact that these ascriptions are clearly being offered as a legislative means of foreclosing a currently pending tax dispute that can be resolved only by applying precisely the legislation that H.B. 1030 purports to interpret.
In my opinion, the proposed A.C.A. §§ 26-53-433(e)(2) and -141(e)(1) in all likelihood offend the principle of separation of powers set forth at Ark. Const. art. 4, §§ 1 and 2, which provide that the three branches of government shall independently pursue their various functions. Under the classic division of governmental powers, the legislature makes the laws and appropriates public revenues, the executive administers the laws and expends the appropriations, and the judiciary interprets the laws.Federal Express Corp. v. Skelton, 265 Ark. 187, 197-98, 578 S.W.2d 1
(1979). At issue in Skelton was whether the state could assess use tax on replacement parts supplied to a company engaged in the business of leasing to railways various types of railroad cars. The company alleged that the property had been exempted from taxation by Act 1237 of 1975, in which the legislature declared that "it was not the intent of Act 487 of 1949, as amended, to impose the compensating use tax upon . . . railroad parts, cars and equipment, or to any tangible personal property owned or leased by . . . railroad companies. . . ." Id. at 198. The court remarked:
 The 1975 legislature cannot state what the 1949 legislature intended when it enacted Act 478 of 1979; such interpretation falls exclusively within the province of the judicial branch.
Id. at 199.
In the present case, the Department of Finance and Administration has apparently taken the position that a tax liability under the 1949 legislation has accrued on equipment that was registered through third parties in Oklahoma. Although I cannot opine on the factual question of whether the Department is correct in its analysis, I can and will opine that the judiciary, not the legislature, is the appropriate branch of government to determine whether the Department is correct under the 1949 Act. Stated differently, I do not believe the legislature is constitutionally situated to interpret past legislation to resolve a pending dispute. Accord Ark. Op. Att'y Gen. No. 87-042; see also Jones v.United States, 419 F.2d 593, 598 (8th Cir. 1969) ("Construction of an existing statute is a task for the courts and not for legislative committees. Mr. Chief Justice Marshall long ago observed that "a mistaken opinion of the legislature concerning the law, does not make law."Postmaster-General of U.S. v. Early, 25 U.S. (12 Wheat.) 136, 148,6 L.Ed. 577 (1827).").
I further believe that if a court were to conclude that H.B. 1030 indeed contains a tax "amnesty" provision — i.e., that the bill is actually granting a brand-new, retroactive exemption, rather than simply acknowledging an exemption that has existed since 1949 — I believe the court would further conclude that this amnesty provision is unconstitutional special legislation that offends Ark. Const. amend. 14
and, quite probably, Ark. Const. art. 5, § 25. Amendment 14 provides:
 The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts.
Article 5, § 25 provides:
 In all cases where a general law can be made applicable no special law shall be enacted; nor shall the operation of any general law be suspended by the Legislature for the benefit of any particular individual, corporation or association; nor where the courts have jurisdiction to grant the powers or the privileges or the relief asked for.[6]
Skelton characterized as impermissible special legislation a provision that exempted replacement railroad parts from use taxation. In the course of striking that exemption, the court observed:
 In Whittaker v. Carter, 238 Ark. 1074, 386 S.W.2d 498 (1965), we held that an enactment violates Amendment 14 when it is retrospective in nature so as to exclude persons who would otherwise be subject to the operation of the enactment.
 Section 2 of Act 1237 operates retrospectively to include within its operation only those delinquent taxpayers who have failed and refused to pay the tax. Those who have paid the tax are excluded from the operation of the law simply because they paid the tax. The exclusion of those who were attempting to comply with the law at the time the tax matured, in effect, penalizes them because of their compliance.
265 Ark. at 196-97. The Court's analysis in Skelton appears to squarely cover and prohibit the amnesty provisions of H.B. 1030. Although the determination is ultimately one of fact, there are doubtless numerous purchasers of truck tractors or semitrailers, some possibly registered through third parties in Oklahoma, who paid Arkansas use tax during the period at issue.[7] Thus in my opinion, as the Arkansas Supreme Court has already held, any legislation that purports to forgive a matured tax obligation for some taxpayers while other taxpayers who have already paid the tax cannot benefit from the legislation amounts to special legislation that violates the above constitutional provisions.
Finally, again in accordance with the court's ruling in Skelton, I believe any legislation that purports to forgive any corporate sales or use tax liability that has accrued under previous legislation would violate Ark. Const. art. 12, § 12, which provides:
 Except as herein otherwise provided, the State shall never assume or pay the debt or liability of any county, town, city, or other corporation whatever, or any part thereof, unless such debt or liability shall have been created to repel invasion, suppress insurrection or to provide for the public welfare and defense. Nor shall the indebtedness of any corporation to the State ever be released or in any manner discharged save by payment into the public treasury.
In Skelton, the court offered the following analysis of this issue:
 Section 2 of Act 1237 of 1975 prohibits Appellee (an executive branch official) from collecting from certain specified taxpayers use taxes which accrued under the 1949 Act and prior to the enactment of this Act. . . .
 The courts of other states have been unanimous in holding that a law or ordinance which attempts to release a tax liability, obligation or indebtedness violates provisions of their constitutions. Ollivier et al. v. City of Houston, 54 S.W. 943 (Tex. 1900); Community Public-Service Company v. James et al., 167 S.W.2d 588 (Tex. 1942); Werner v. Riebe et al., 296 N.W. 422 (N.D. 1941); Fontenot, Director of Revenues v. Hurwitz-Mintz Furniture Co. et al., 7 So.2d 712 (La. 1942); Graham Paper Co. v. Gehner et al., 59 S.W.2d 49 (Mo. 1933); State v. Pioneer Oil and Refining Co. et al., 292 S.W. 869 (Tex. 1927); City of Louisville v. Louisville Ry. Co., 63 S.W. 14 (Ky. 1901); Daniels v. Sones, 157 So.2d 626 (Miss. 1962); Sloan v. Calvert, 497 S.W.2d 125 (Tex. 1973); Smith v. State, 420 S.W.2d 204 (Tex. 1967); Ivester v. State ex rel. Gillum, 83 P.2d 193 (Okla. 1938). As the Texas Court stated in Smith v. State, supra:
 A tax that has been levied and has become a liability matured under a tax statute is an indebtedness or obligation within the meaning of this provision of the Constitution.
 We hold a matured tax claim to be an "indebtedness" within the meaning and context of Article 12, Section 12, of the Arkansas Constitution, and that Section 2 of Act 1237 is in violation of this provision of the Arkansas Constitution.
265 Ark. at 195-96.
As previously noted, determining which commercial vehicles are in fact subject to use tax will entail conducting a factual inquiry in a judicial forum. However, I can and will opine that if a court determines that the corporate owner of a commercial vehicle incurred use tax liability in some previous year, the court will further declare void as violating Ark. Const. art. 12, § 12 any enactment purporting to forgive that liability.
I feel compelled to stress in closing that I have not rendered any opinion regarding whether those who registered their newly purchased truck tractors or semitrailers in Oklahoma through third parties are subject to Arkansas sales or use taxation. Only a finder of fact can ultimately make that determination. I have opined only that the legislature cannot simply declare either (1) that no use or sales tax ever attached to such equipment or (2) that any liability that may have attached is now forgiven. I appreciate that a court may eventually conclude that certain trucking companies indeed owe use taxes on equipment that had been registered in Oklahoma. I further appreciate that these companies may feel themselves blind-sided by this liability, having concluded based on past practice that registration in Oklahoma pursuant to the Plan carried with it a tax credit. However, notwithstanding, I am obligated to point out the constitutional infirmities in the proposed palliative legislation.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
Enclosures
[1] I am enclosing a copy of Ark. Op. Att'y Gen. No. 2002-170, in which my predecessor discussed the possible application of current Arkansas law regarding sales and use taxes to vehicles of the sort described in your request.
[2] In both Ark. Ops. Att'y Gen. Nos. 2002-170 and the attached 2002-333, my predecessor addressed Oklahoma's practice of allowing third-party registration of trucks and equipment headquartered in Arkansas. I will not repeat that analysis here.
[3] Section 27-14-501 establishes an ex officio commission composed of the Director of the Department of Finance and Administration, the Chairman of the State Highway Commission and the Director of State Highways and Transportation charged with the duty of negotiating "reciprocal agreements relating to the operation of motor vehicles."
[4] The proponents of H.B. 1030 maintain that registering a vehicle in Arkansas is a condition precedent to the state's ever imposing any sales or use tax upon it. In support of this proposition, they invoke A.C.A. §26-53-126 (a)(1)(A)(i), which provides the following with respect to use taxation:
 All new and used motor vehicles, trailers, or semitrailers required to be licensed in this state shall, upon being registered in this state, be subject to the tax levied herein and all other use taxes levied by the state irrespective of whether such motor vehicle, trailer, or semitrailer was purchased from a dealer or an individual.
See also Acts 19 of 1957 and 260 of 1958 (requiring the Commissioner of Revenues to collect sales or use tax before registering any motor vehicle, trailer or semitrailer); A.C.A. § 25-62-510(a)(1)(A) (requiring the Director of the Department of Finance and Administration to collect sales tax due before registering new or used motor vehicles, trailers or semitrailers). In my opinion, A.C.A. § 26-53-126 (a)(1)(A)(i) provides only the if a vehicle is required to be registered in this state, any applicable use tax will be due upon registration. I do not read this statute as necessarily exempting a commercial vehicle from Arkansas use taxation in every instance in which it is properly registered in another state. Moreover, this statute, enacted by Act 3 of 1991, § 7(a), is qualified by Act 3 of 1991, § 7(c), codified at A.C.A. §§ 26-53-126(c), which provides that the tax "shall not apply to a motor vehicle trailer or semitrailer to be registered by a bona fide nonresident of this state." This qualification is consistent with the provision of the Plan whereby a nonresident of any member state might nonetheless register his vehicle there, regardless of where he might owe sales or use tax, so long as he has an "established place of business" in the state of registration. Nothing in this statutory scheme states that an owner can never owe Arkansas use tax upon a vehicle registered in another state.
[5] I will note that it seems tenuous, at best, to suggest that authorizing third-party registrations in other states amounts to an automatic and silent exemption of vehicles thus registered from Arkansas sales or use tax liability. See discussion in Ark. Op. Att'y Gen. No.2002-171. In my opinion, regardless of what it might authorize regarding a commercial vehicle's state of registration, the legislation authorizing reciprocal agreements is ultimately concerned only with the allocation ofregistration fees and not of sales or use taxes.
[6] The Publisher's Note to this provision reads: "This section may be superseded by Const. Amend. 14."
[7] The proponents of H.B. 1030 contend — and, for purposes of discussion, I will accept — that the issue of sales, as opposed to use, taxation is irrelevant to the question of tax amnesty because no retailer sold truck tractors or semitrailers in Arkansas during the period at issue.